[Civ. No. 20379. First Dist., Div. Two. Nov. 21, 1963.]

KAY ELLIS, Plaintiff and Appellant, v. CITY COUNCIL OF THE CITY OF BURLINGAME et al., Defendants and Respondents.

Edith B. Taylor for Plaintiff and Appellant.

Burress Karmel for Defendants and Respondents.

SHOEMAKER, P. J.—This is an appeal by plaintiff Kay Ellis from a judgment denying her damages in an action in which she sought and secured the issuance of a peremptory writ of mandate.

Plaintiff brought this action to obtain the writ compelling the issuance of a building permit to construct a swimming pool, and, further, to obtain damages incurred as a result of defendants' refusal to issue the permit at an earlier date. Defendants were the City Council of the City of Burlingame, the individual members of said body, the city attorney, the city manager, the building inspector, and the Department of Public Works of the City of Burlingame.[1] The matter came on for hearing on December 14, 1959. The trial court deferred consideration of the damages issue and determined first whether the peremptory writ should issue. Defendants, at the commencement of the trial, "orally demurred" generally to plaintiff's cause of action for damages. The trial court sustained the demurrer with leave to amend and then proceeded to hear evidence relative to the issuance of the writ. On March 18, 1960, the court issued a peremptory writ of mandate compelling the issuance of the building permit prayed for. On March 28, 1960, defendants filed a return to the writ, stating that the permit had duly been issued.

Meanwhile, on January 19, 1960, plaintiff filed her first amended petition relative to the damages aspect of the case, and on February 17, 1960, filed a second amended petition. Plaintiff's second amended petition set forth four causes of action for damages: the first based upon defendants' negligent failure to perform a ministerial act; the second upon defendants' negligent failure to perform a discretionary act; the third upon defendants' intentional, wilful, arbitrary and malicious refusal to perform a ministerial act; and the fourth upon defendants' intentional, wilful, arbitrary, and malicious refusal to perform a discretionary act. Defendants de-

---

[1]Although the original petition actually named as defendant the "Office of Building Inspector" rather than the "Department of Public Works" of the City of Burlingame, this would appear to be an incorrect designation. The second amended petition and all subsequent portions of the record refer to the "Department of Public Works."

murred generally to all four causes of action. The demurrer was sustained without leave to amend as to the first, second and fourth causes of action. The demurrer to the third cause of action was overruled as to the members of the city council, the city manager, and the city building inspector, but sustained without leave to amend as to the other defendants.

On May 17, 1960, the remaining defendants filed their answer to plaintiff's third cause of action, denying the materal allegations thereof and further asserting that the refusal of a building permit to construct a swimming pool was justified on the ground that plaintiff had refused to discontinue an illegal use of an accessory structure previously erected on her property. The answer also contained a plea in abatement on behalf of the city manager and the members of the city council on the ground that none of these individuals had jurisdiction, power or authority to issue a building permit.

On November 17, 1960, the cause came on for trial before a different superior court judge than the one who had presided at the hearing relative to the issuance of the writ and who had subsequently ruled upon the demurrer to plaintiff's second amended petition for damages. This change appears to have been the result of plaintiff's having filed a pretrial statement to the effect that she would move to disqualify the original trial judge if he were assigned to preside at the damages portion of the trial.

The evidence produced at this final portion of the action was substantially without conflict. On July 20, 1956, plaintiff applied for and received from defendant James Watson, a building inspector for the City of Burlingame, a building permit to construct a swimming pool on premises owned by plaintiff in said city. On the same date, plaintiff also applied for and was issued a building permit to construct a bathhouse on the same property. Subsequently Watson granted permission to construct the bathhouse first, and renewed the original 90-day permit to construct the swimming pool until April 1957.

When plaintiff thereafter applied for another renewal or for the issuance of a new permit, her application was denied. Watson testified that plaintiff had complied with all the requirements for the issuance of a new permit and that he was preparing to issue it when he was instructed by his superior, the director of public works, that he was not to issue the permit until plaintiff had corrected certain violations of the uniform building code in the bathhouse, and had stopped

using the bathhouse as sleeping or living quarters in violation of the zoning ordinance applicable to an R-1 district.

Following the denial of her application for a new permit to construct a swimming pool, plaintiff, in 1957, requested a hearing before the Burlingame City Council. The council refused to grant a hearing. In December 1958, plaintiff again appeared before the council and was informed that her request for issuance of a permit would not be entertained at that time. On August 3, 1959, plaintiff appeared before the council for the third time. On this occasion, the council, acting upon the advice of the city attorney and the city manager, voted not to issue a permit until plaintiff had corrected the existing violations.

The Burlingame City Attorney testified that the city building inspector was the only official or employee of the city who was authorized to issue a building permit and that there was no right of appeal to the city council upon the denial of a permit. He also stated, however, that the city council could exercise a certain degree of control over the issuance of permits and that if the building inspector should wrongfully refuse to issue a permit, the council could direct him to do so under threat of preferring charges against him before the Civil Service Commission.

The plaintiff also testified at length as to the damages sustained by her as a result of defendants' refusal to issue her a new permit in 1957.

At the conclusion of the plaintiff's case, defendants moved for a nonsuit on behalf of all defendants. This motion was granted as to the members of the city council and the city manager and denied as to the city building inspector.

The trial court found in accordance with the above and then added that there was no evidence upon which the court could find that the issuance of a building permit was a ministerial act and that the court accordingly found that the building inspector was not acting in a ministerial capacity in refusing to issue a renewal permit; that the building inspector did not act intentionally, arbitrarily, wilfully or maliciously in refusing to issue the renewal permit; that plaintiff had not been damaged in any amount by the denial of the permit applied for. The trial court entered judgment of dismissal in favor of the city manager and the members of the city council. Judgment on the merits was entered in favor of defendant building inspector. An award of costs was also made in favor of the city manager, the city building inspector, and the members of the city council.

Appellant's first contention on appeal is that the trial court erred in ruling that the issue of damages could not be heard at the trial for the issuance of the writ of mandate. We have examined the record and find no such ruling. The trial judge who presided at the hearing relative to the issuance of the writ did indicate that it was his intention to defer consideration of the damages issue until he had first determined whether or not the writ should issue. This procedure was proper and, in any event, was agreed to by appellant's counsel. Although the proceeding did ultimately develop into two separate trials before different superior court judges, this unusual situation occurred as the direct result of appellant's statement that she intended to move to disqualify the original trial judge. She certainly may not rely upon an alleged error which was invited solely by her own conduct. (*Abbott* v. *Cavalli* (1931) 114 Cal.App. 379, 383 [300 P. 67].)

Appellant's second contention is that the judgment denying her damages is incomplete because it does not contain a finding that she was entitled to a writ of mandate for the issuance of a building permit and that said writ was issued. Appellant does not show us how she was prejudiced by the lack of any such finding. The record reveals that the writ issued and that respondents duly complied with its direction. Under the circumstances, it is absurd to contend that any prejudice resulted. Moreover, the damages portion of the case was tried before a judge who had not heard the evidence presented at the hearing for issuance of the writ and who accordingly confined his findings to the issues properly before him. Any findings relative to the issuance of the writ ought properly to have been entered by the judge who heard that portion of the case. An examination of the record reveals that that judge did direct appellant's counsel to prepare findings of fact and conclusions of law pertaining thereto. When appellant's counsel neglected to do so, the writ issued without any such findings.

There is no merit in appellant's next contention that the trial court erred in sustaining respondents' "oral demurrer" to appellant's original petition for damages. An objection that the complaint does not state facts sufficient to constitute a cause of action may be taken orally. (Code Civ. Proc., § 434; *McClure* v. *Donovan* (1949) 33 Cal. 2d 717, 724 [205 P.2d 17].) Since respondents' "oral demurrer" was clearly an objection of this nature, the trial court did not err in ruling in their favor.

■ Appellant next contends that the evidence conclusively established that the denial of appellant's application for a renewal or for a new building permit was both a ministerial and an intentional act and that the trial court's findings to the contrary are therefore erroneous. We agree. In *Palmer* v. *Fox* (1953) 118 Cal.App.2d 453 [258 P.2d 30], the plaintiffs, having fully complied with all legal requirements, applied to the deputy chief engineer of the City of Palos Verdes Estates for the issuance of a building permit. The deputy, although fully empowered to grant such a permit, refused to do so. In affirming the judgment granting plaintiffs a writ of mandate, the court held that the deputy had no right or duty to withhold the permit when plaintiffs had complied with the prerequisites for its issuance. ■ "When an official is required and authorized to do a prescribed act upon a prescribed contingency, his functions are ministerial only, and mandamus may be issued to control his action upon the happening of the contingency." (P. 458.) (To the same effect, see *Munns* v. *Stenman* (1957) 152 Cal.App.2d 543, 557 [314 P.2d 67].)

■ In the instant case, the evidence conclusively established that appellant had complied with all the legal requirements entitling her to the issuance of a new or renewal permit to construct a swimming pool. Respondent building inspector himself testified that appellant had fulfilled all the prerequisites for the issuance of the permit and that he was preparing to issue it when he was instructed by his superior that the permit was to be withheld until appellant had corrected certain violations in her bathhouse. A thorough examination of the record discloses no evidence that the elimination of violations in an accessory structure was a legal condition to the issuance of a permit to construct a swimming pool. To the contrary, it is apparent that it was the intent of the city officials to deny appellant a permit to which she was clearly entitled as a means of coercing her to comply with separate and entirely unrelated provisions of the building code and of the applicable zoning ordinance. Under such circumstances, we hold that the building inspector's act of withholding the permit applied for constituted an intentional and arbitrary refusal to perform a ministerial act. The mere fact that his conduct may have been motivated by a negligent belief that he was legally entitled to withhold the permit did not render his conduct any less deliberate and intentional. (*Sarafini* v. *City & County of San Francisco* (1956) 143 Cal.App.2d 570, 574 [300 P.2d 44].)

In the light of the foregoing, the uncontradicted evidence admits only of a finding that the conduct of respondent building inspector, in denying appellant a new or renewal permit, constituted an intentional and arbitrary refusal to perform a ministerial act. Under such circumstances, the trial court's findings to the contrary must be set aside. (Code Civ. Proc., § 956a; *Mirich* v. *Underwriters at Lloyd's London* (1944) 64 Cal.App.2d 522, 529 [149 P.2d 19]; *Centerville Amusement Co.* v. *Salih* (1962) 199 Cal.App.2d 106, 113-114 [18 Cal.Rptr. 671].)

■ It follows as a necessary corollary of the above that respondent building inspector was clearly liable for any damages sustained by appellant as a result of the denial of the permit. ■ " 'The rule is well settled that where the law requires absolutely a ministerial act to be done by a public officer, and he neglects or refuses to do such act, he may be compelled to respond in damages to the extent of the injury arising from his conduct.' " *Mock* v. *City of Santa Rosa* (1899) 126 Cal. 330, 344 [58 P. 826], where the court quoted from *Amy* v. *Barkholder*, 78 U.S. (11 Wall.) 136 [20 L.Ed. 101].) ■ In the present case, appellant testified in considerable detail as to the various expenditures which she incurred as a result of being unable to proceed with the construction of her pool until March 1960. She testified that in 1957, prior to her application for a new or extended permit, she had already excavated and purchased various materials. When she was thereafter prevented from proceeding with the construction of the pool, she was compelled to take measures to prevent cave-ins and thereby protect the adjoining property. She was subsequently required to reexcavate and to sandblast various steel materials which had been damaged by rust. In addition, the cost of constructing the pool in 1960 was substantially higher than the bids she had obtained in 1957. In the light of this uncontradicted evidence, it is clear that there was no basis in the record for the trial court's finding that appellant sustained no damages whatever as a result of the denial of the permit. This finding is vacated and the cause must be remanded for a determination of the amount of compensatory damages to which appellant is entitled.

■ Appellant also urges that her petition for damages contained a prayer for exemplary or punitive damages as well as for compensatory damages. Pursuant to Civil Code, section 3294, exemplary or punitive damages may be recovered for breach of an obligation not arising from contract

where the defendant has been guilty of oppression, fraud, or malice, express or implied. Since appellant's petition for damages contains no allegations of either oppression or fraud, her claim to punitive damages is based solely upon respondent's alleged malice. The trial court found that respondent building inspector did not act maliciously in denying appellant's application for a permit. This finding must be upheld. "Malice" has been defined as "the motive and willingness to vex, harass, annoy, or injure." (*Shumate* v. *Johnson Publishing Co.* (1956) 139 Cal.App.2d 121, 135 [293 P.2d 531].) It implies "an act conceived in a spirit of mischief or with criminal indifference towards the obligations owed to others." (*Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517, 527 [322 P.2d 933].) In the present case, the evidence falls far short of establishing malice as a matter of law.

Appellant next contends that the trial court erred in granting a nonsuit in favor of the city manager and the members of the city council. In discussing this contention, it will be recalled that the damages portion of the case was tried, as above noted, upon the issues raised by the third cause of action set forth in appellant's second amended petition. The sole charging allegation therein set forth was that each of the named respondents, having the present right, power and legal duty to perform the ministerial act of issuing the permit applied for, intentionally, arbitrarily, wilfully and maliciously refused to do so. The evidence produced at the trial clearly indicated that neither the city manager nor the members of the city council were vested with the power or authority to issue permits, and it was for this reason that the trial court granted a nonsuit as to these respondents. Appellant, in contending that this ruling was erroneous, urges that this court may take judicial notice of the fact that the City of Burlingame is classified, pursuant to Government Code, section 34102, as a general law city and that as such, it is subject to Government Code, sections 34856 and 36506, which provide that both the city manager and the city council shall have the power to dismiss appointive officers and employees of the city. Appellant asserts that the power to terminate the employment of the building inspector was tantamount to the power to issue building permits since the city manager or the city council could have compelled the issuance of a permit through the threat of dismissal. Appellant urges that the failure to exercise this power in her behalf rendered the city manager and the members of the

city council jointly liable with the building inspector for the damages caused by the wrongful refusal of the permit. This contention may not be sustained.

Although it is true that a governmental agent is personally liable for torts which he commits when acting in a ministerial capacity, a different situation exists with respect to discretionary conduct. "Because of important policy considerations, the rule has become established that government officials are not personally liable for their discretionary acts within the scope of their authority even though it is alleged that their conduct was malicious." (*Lipman* v. *Brisbane Elementary School Dist.* (1961) 55 Cal.2d 224, 229 [11 Cal.Rptr. 97, 359 P.2d 465].) In the instant case, respondent building inspector was a city employee who was not vested with discretion and who was under a clear and affirmative duty to perform the ministerial act of issuing a permit to any applicant who had complied with the legal prerequisites. His failure to fulfill this duty accordingly subjected him to liability for any damages proximately resulting therefrom. As to the city manager and the members of the city council, however, an entirely different situation is presented. Since appellant concedes that none of these officials possessed the power or authority to issue a permit themselves, their liability is predicated solely upon their failure to exercise their discretion in appellant's favor by affirmatively undertaking to compel the building inspector to issue a permit to appellant. Under the rule of the *Lipman* case, this failure to act did not subject them to liability and the trial court was accordingly correct in granting a nonsuit in their favor.

Appellant's final contention is that the trial court erred in awarding costs to the building inspector, the city manager, and the members of the city council. Appellant relies on Code of Civil Procedure, section 1095, which provides that a successful applicant for a writ of mandate "may recover the damages which he has sustained ... together with costs." It is appellant's position that upon the granting of the peremptory writ compelling the issuance of the permit, she became entitled to recover her costs and that the trial judge who presided at the damages portion of the case erred in failing to include such an award in the judgment. This contention cannot be upheld.

Although Code of Civil Procedure, section 1095, does authorize an award of costs to a successful petitioner for writ of mandate, it is settled that the granting of such an

award is within the discretion of the trial court. (*Kramer* v. *State Board of Accountancy* (1962) 200 Cal.App.2d 163, 177 [19 Cal.Rptr. 226].)　█　In the present case, appellant could have applied for an award of costs upon the granting of the peremptory writ. She failed to do so, however, just as she similarly failed to prepare the findings of fact and conclusions of law requested by the trial court. Since the filing of a cost bill is mandatory, appellant may not now contend that the trial judge who issued the peremptory writ ought to have made an award of costs. (Code Civ. Proc., §§ 1033, 1110; *Davis Lumber Co.* v. *Hubbell* (1955) 137 Cal. App.2d 148, 150 [290 P.2d 33]; *Levinson* v. *Silverman* (1930) 110 Cal.App. 467, 469 [294 P. 434].)

█　Due to the peculiar bifurcated nature of the trial, the damages portion of the case was heard by a different trial judge, who awarded respondents only those costs incurred in defense of appellant's petition for damages. Since the judgment of dismissal in favor of the city manager and the members of the city council was proper, the award of costs in their favor must be upheld. The judgment in favor of the building inspector must, as above noted, be reversed, and the award of costs in his favor will therefore be set at large, being merely incidental to the judgment. (*Kotronakis* v. *City & County of San Francisco* (1961) 192 Cal.App.2d 624, 625-626 [13 Cal.Rptr. 709]; *Purdy* v. *Johnson* (1929) 100 Cal.App. 416, 420-421 [280 P. 181.) Upon the entry of a money judgment in her favor, appellant will therefore be free to apply for an award of costs against respondent building inspector.

For the reasons above stated, the judgment in favor of the city manager and the members of the city council is affirmed, and the judgment in favor of the building inspector, James Watson, is reversed with directions to the trial court to determine the damages sustained by appellant and enter judgment in her favor against him in such amount. Appellant to recover costs on appeal.

Agee, J., and Taylor, J., concurred.