[Civ. No. 31833. First Dist., Div. Two. Apr. 23, 1974.]

HENRY O'HAGAN, Plaintiff and Appellant, v.
BOARD OF ZONING ADJUSTMENT OF THE CITY OF SANTA
ROSA et al., Defendants and Respondents.

## COUNSEL

John E. Olmsted for Plaintiff and Appellant.

John D. Flintner, City Attorney, and Michael J. Donovan, Assistant City Attorney for Defendants and Respondents.

## OPINION

KANE, J.—Plaintiff Henry O'Hagan appeals from a summary judgment denying him recovery for damages in a mandamus action..

The pertinent facts reveal that on February 8, 1961, one Vernon Rose ("Rose"), the owner of the property located at 1207 Fourth Street in Santa Rosa, applied for a use permit for the purpose of constructing a drive-in restaurant at said location. On February 16, 1961, the board of zoning adjustment ("Board") issued a temporary use permit. The use permit specifically stated that the establishment, maintenance or operation of the use applied for would not be detrimental to the health, safety, peace, morals, comfort and general welfare of the persons residing in the neighborhood or to the general welfare of the city. The use permit was reissued on February 21, 1963, and upon the above stated conditions it was renewed on a permanent basis on March 17, 1966.

On March 1, 1967, Rose leased the premises to appellant for a term of 10 years. Appellant used the premises to operate a drive-in restaurant named the "Burger King." Both before and after the execution of the lease complaints were received by the city with regard to the operation and activities of the "Burger King." In order to remedy the situation, meetings and hearings were held. On February 15, 1968, appellant consented to a resolution of the Board limiting the operation of his business from 11 a.m. to 9 p.m. for a period of six months. The resolution contained other conditions pertaining to the physical condition of the drive-in to which appellant also agreed. On August 15, 1968, the Board passed another resolution increasing the hours of operation from 9 a.m. to 10 p.m. during daylight saving time but reverting back to the original closing hour of 9 p.m. upon the return to standard time. On August 29, 1968, appellant filed an appeal with the city council refusing to continue with the closing hours established in the August 15, 1968 resolution. On September 10, 1968, the city council referred the matter to the Board. After a hearing held on September 26, 1968, the Board revoked appellant's use permit on the ground that the operation of the business constituted a public nuisance (Santa Rosa Zoning Ordinance, art. IV, § 61 ("Ordinance")). Appellant appealed the decision to the city council which affirmed the decision of the Board on October 1, 1968.

Appellant nonetheless continued to operate his business and on October 31, 1968, an action to abate a public nuisance was filed by the city against appellant. During the pendency of the nuisance action, on February 18, 1969, appellant filed a petition for a writ of mandamus under

Code of Civil Procedure section 1094.5, requesting that the decision of the Board be set aside. On June 12, 1969, a judgment in the nuisance action was handed down holding that several conditions of the operation of the "Burger King" constituted a public nuisance but that the nuisance could be controlled if the conditions were rectified. That judgment was not appealed.

On November 13, 1969, the superior court denied appellant's petition for a writ of mandamus. On appeal, this court reversed the lower court's judgment on the ground that the trial court should have given res judicata effect to the decision rendered in the nuisance action (*O'Hagen* v. *Board of Zoning Adjustment* (1971) 19 Cal.App.3d 151 [96 Cal.Rptr. 484]).

On November 8, 1971, pursuant to stipulation by counsel, appellant was granted leave to amend his original mandamus petition to add a claim for damages allegedly arising from loss of good will, profit, employment and from incurring financial obligations (taxes, legal fees, loans, insurance premimus, etc.). Respondents thereafter filed a motion for summary judgment which was granted on the basis that the governmental tort immunity as a matter of law barred appellant's claim to any possible damages resulting from the revocation of the use permit.

Thus, the issue before us, broadly stated, is whether a public entity may be held liable for damages arising from an allegedly wrongful revocation of a use permit.

In answering this question, we point out that codifying the law existing prior to the 1963 California Tort Claims Act ("Tort Claims Act") (*Lipman* v. *Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224 [11 Cal. Rptr. 97, 359 P.2d 465]; *Hardy* v. *Vial* (1957) 48 Cal.2d 577 [311 P.2d 494, 66 A.L.R.2d 739]; *White* v. *Towers* (1951) 37 Cal.2d 727 [235 P.2d 209, 28 A.L.R.2d 636]), Government Code[1] section 820.2 grants a general immunity to public employees for injuries resulting from an exercise of discretion vested in them even if the discretion is abused.[2] Section 821.2, in turn, specifically designates licensing activities as discretionary, providing that "*A public employee is not liable for an injury caused by* his issuance, denial, suspension or *revocation of,* or by his failure

---

[1]Unless otherwise indicated, all references will be made to the Government Code of California.

[2]Section 820.2 reads as follows: "Except as otherwise provided by statute, *a public employee is not liable for an injury resulting from his act* or omission *where the act* or omission *was the result of the exercise of the discretion* vested in him, *whether or not such discretion be abused.*" (Italics added.)

or refusal to issue, deny, suspend or revoke, *any permit,* license, certificate, approval, order, or similar authorization *where he is authorized by enactment to determine whether or not such authorization should be* issued, denied, suspended or *revoked.*" (Italics added.)

In the case at bench, the use permit was revoked by respondents pursuant to the Ordinance, which provided in part that "Use permits may be revoked by the Planning Commission for breach of condition or other good cause upon notice and hearing." Since under section 810.6 enactment means, among other things, ordinance or regulation, the revocation of the use permit was clearly authorized under section 821.2.

We further note that general immunity for discretionary acts and specific immunity for licensing activities are also provided for the public entities. While section 815.2, subdivision (b),[3] accords a derivative immunity to the public entity if its employees are exempted from liability, section 818.4 clothes the public entity with specific immunity for licensing activities. This latter section provides that "*A public entity is not liable for an injury caused by* the issuance, denial, suspension or *revocation of,* or by the failure or refusal to issue, deny, suspend or revoke, *any permit,* license, certificate, approval, order, or similar authorization *where the public entity or an employee of the public entity is authorized by enactment to determine. whether or not such authorization should be* issued, denied, suspended or *revoked.*" (Italics added.)

■ Thus, it is plain that under the Tort Claims Act injuries stemming from the issuance, denial, revocation or suspension of licenses, permits and similar official authorizations are excluded from the scope of tort liability of entities and employees. This statutory immunity is so strong that it even prevails over the liability imposed by section 815.6 for failure to discharge a mandatory duty (Van Alstyne, Cal. Government Tort Liability (Cont. Ed.Bar 1964) § 5.58, at p. 165). It follows therefore that under the authorities cited above both the public employees who exercised their discretion in the numerous proceedings which culminated in the revocation

---

[3]Section 815.2, subdivision (b), sets forth that "Except as otherwise provided by statute, *a public entity is not liable for an injury resulting from an act* or omission of an employee of the public entity *where the employee is immune from liability.*" The legislative committee comment attached to this section explains that "The California courts have held on many occasions that a public employee is immune from liability for his discretionary acts within the scope of his employment even though the discretion be abused. This rule is codified in Section 820.2. *Under the above section* [§ 815.2], *a public entity also is entitled to the protection of that immunity.*" (Van Alstyne, Cal. Government Tort Liability. (Cont.Ed.Bar 1964) p. 501; italics added.)

of appellant's use permit and respondents were *ipso jure* immune from liability for damages arising from the revocation of the permit in question.

Appellant contends, however, that in the case at bar the immunities granted in the Tort Claims Act are inapplicable because (1) he obtained a vested property right in the use permit which could not be revoked; (2) the injuries referred to in the Tort Claims Act embrace only personal injuries not property rights; and (3) at any rate under section 1095 of Code of Civil Procedure damages are recoverable for prejudicial abuse of discretion by an administrative agency. We disagree.

It is conceded that where, as here, a permit has been properly obtained and in reliance thereon the permittee incurred material expense, the permittee acquires a vested property right to the protection of which he is entitled (*Trans-Oceanic Oil Corp.* v. *Santa Barbara* (1948) 85 Cal. App.2d 776, 784-787 [194 P.2d 148]). However, contrary to appellant's proposition, a vested right is far from being irrevocable. It is well established that a vested right may indeed be revoked if the permittee fails to comply with reasonable terms or conditions expressed in the permit (*Trans-Oceanic Oil Corp.* v. *Santa Barbara, supra,* p. 783; *Brougher* v. *Board of Public Works* (1928) 205 Cal. 426, 433 [271 P. 487]) or if there is a compelling public necessity (*Jones* v. *City of Los Angeles* (1930) 211 Cal. 304, 314 [295 P. 14]). Compelling public necessity warranting the revocation of a use permit may exist where the conduct of the business constitutes a nuisance (*O'Hagen* v. *Board of Zoning Adjustment, supra,* at p. 158). In the case at bench, the city revoked the use permit pursuant to the Ordinance for "good cause" and on a showing that the operation of Burger King constituted a public nuisance (cf. *O'Hagen* v. *Board of Zoning Adjustment, supra,* at p. 161).

Appellant's attempt to classify the right in the use permit as a nonconforming use or variance is unavailing. A variance is not entitled to greater protection than a vested property right and it may also be revoked for good cause, viz., menace to the health, welfare or safety of the public, etc. (cf. *Tustin Heights Assn.* v. *Bd. of Supervisors* (1959) 170 Cal. App.2d 619, 626-627 [339 P.2d 914]).

Appellant's next argument that the injuries contemplated by the Tort Claims Act encompass only personal injuries is similarly unfounded. Under the definition of section 810.8, " 'Injury' means death, injury to a person, *damage to or loss of property*, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, of such nature that it would be actionable if inflicted by a private person." (Italics added.)

In his supplemental petition for writ of mandate appellant claimed inter alia loss of profit, good will, equipment, customers, building, lease, incurrence of taxes, legal fees, loans, insurance, etc. Undoubtedly, these items may properly be classified as "damage to or loss of property," within the meaning of the statute, and they are also covered by the general definition of property.[4]

■ However, appellant's third contention that damages are recoverable under Code of Civil Procedure section 1095, without regard to the Tort Claims Act, presents a question of first impression and requires more detailed attention and analysis.

At the outset, it must be underscored that the exoneration of the public entity or employee under the Tort Claims Act is not unqualified. Section 815, which declares a general nonliability of the public entity for injuries arising from the act or omission of the public entity or a public employee, attaches the qualification "Except as otherwise provided by statute." Section 815.2, subdivision (b), likewise underlines that "Except as otherwise provided by statute" a public entity is not liable for its employee's acts where the employee himself is immune from liability. Finally, section 820.2 precludes the responsibility of a public employee for discretionary acts on the same condition, namely, "Except as otherwise provided by statute."

While it is clear from the language of the Tort Claims Act that its liabilities are subject to immunities established by statute whether inside or outside the act (cf. §§ 815, subd. (b); 815.2, subd. (b); 820, subd. (a); Van Alstyne, Cal. Government Tort Liability, *supra*, § 5.29, at p. 140), it is not entirely evident whether the immunity provisions of the Tort Claims Act extend to liabilities created by statute outside the act (Van Alstyne, Cal. Government Tort Liability, *supra*, § 5.28, p. 139). Code of Civil Procedure section 1095 is one of the statutes which prescribes liability outside the Tort Claims Act (cf. § 815, legislative committee comment; Van Alstyne, Cal. Government Tort Liability, *supra*, at pp. 498-499). In essence, Code of Civil Procedure section 1095, provides that if the petitioner for mandamus recovers judgment, he may also recover damages which he has sustained and that such damages shall be recovered and awarded against the public entity represented by such officer but not against the officer.[5] This is, of course, in direct conflict with the applicable pro-

---

[4]Property is defined as "an aggregate of rights which are guaranteed and protected by the government . . . . It extends to every species of valuable right and interest, and includes real and personal property, easements, [and] franchises. . . ." (Black's Law Dict. (4th ed. 1957) p. 1382.)

[5]The exact language of Code of Civil Procedure section 1095, as amended in 1963 is set out as follows: *"If judgment be given for the applicant, he may recover the damages which he has sustained,* as found by the jury, or as may be determined

visions of the Tort Claims Act which provide a clear-cut immunity for discretionary acts in general (§§ 820.2, 815.2, subd. (b)) and for licensing activities in particular (§§ 821.2, 818.4). For the reasons which follow we resolve the conflict in favor of the Tort Claims Act, and hold that the immunity provisions of the act must be given effect over the damage provisions of Code of Civil Procedure section 1095.

First, it is apparent that Code of Civil Procedure section 1095 is not limited in scope to administrative mandamus under Code of Civil Procedure section 1094.5, but is a general authority for award of damages and costs in *any* mandamus action (cf. *Colthurst* v. *Fitzgerald* (1922) 56 Cal.App. 740 [206 P. 471]). In other words, this means that the Tort Claims Act is a special statute regulating the tort liabilities and immunities of public entities and employees, while Code of Civil Procedure section 1095 is a general statute providing for damages in mandamus proceedings which embrace a great variety of legal actions (cf. Code Civ. Proc., §§ 1084-1097; 32 Cal.Jur.2d, Mandamus, §§ 1-4, at pp. 116-120). This, of course, calls into play the well established legal principle that where inconsistencies appear in statutes, a special statute dealing expressly with a particular subject controls and takes priority over the general statute (*Brill* v. *County of Los Angeles* (1940) 16 Cal.2d 726, 732 [108 P.2d 443]; *Tousley* v. *Dishman* (1928) 90 Cal.App. 759, 761 [266 P. 373]).

Secondly, and more importantly, weighty if not overriding policy considerations also impel the conclusion reached above. It is plain that the resolution of the conflict here poses a legal policy question, the determination of which calls for careful deliberation and weighing of the legislative intent underlying the respective statutes (cf. Van Alstyne, Cal. Government Tort Liability, *supra,* § 5.28, p. 140). Taking this approach, it appears that while the primary purpose of Code of Civil Procedure section 1095 was to codify the general doctrine that once it has taken jurisdiction equity will adjudicate the entire controversy (*Sonnicksen* v. *Sonnicksen*

---

by the court or referee, upon a reference to be ordered, together with costs; and for such damages and costs an execution may issue; and a peremptory mandate must also be awarded without delay; provided, *however,* that in all cases where the respondent is an officer of a public entity, *all damages* and costs, or either, which may be recovered or awarded, *shall be recovered and awarded against the public entity* represented by such officer *and not against such officer* so appearing in said proceeding, and the same shall be a proper claim against the public entity for which such officer shall have appeared, and shall be paid as other claims against the public entity are paid; but in all such cases, the court shall first determine that the officer appeared and made defense in such proceeding in good faith. For the purpose of this section, 'public entity' includes the State, a county, city, district or other public agency or public corporation. For the purpose of this section, 'officer' includes officer, agent or employee." (Italics added.)

(1941) 45 Cal.App.2d 46, 52 [113 P.2d 495]), in enacting the Tort Claims Act the avowed legislative goal was to reaffirm the preexisting law which had eliminated the public entities' liability for the discretionary acts of their employees (legislative committee comment to § 820.2; Van Alstyne, Cal. Government Tort Liability, *supra,* at p. 519), and to provide an explicit immunity for licensing activities as a special form of discretionary acts (Van Alstyne, Cal. Government Tort Liability, *supra,* § 5.58, at p. 166). The legislative intent underlying these immunities is well articulated in the comments of the California Law Revision Commission, which state the rationale behind these rules as follows: "Public entities and public employees should not be liable for failure to make arrests or otherwise to enforce any law. They should not be liable for failing to inspect persons or property adequately to determine compliance with health and safety regulations. *Nor should they be liable for negligent or wrongful issuance or revocation of licenses and permits. The government has undertaken these activities to insure public health and safety. To provide the utmost public protection, governmental entities should not be dissuaded from engaging in such activities by the fear that liability may be imposed if an employee performs his duties inadequately. Moreover, if liability existed for this type of activity, the risk exposure to which a public entity would be subject would include virtually all activities going on within the community.* There would be potential governmental liability for all building defects, for all crimes, and for all outbreaks of contagious disease. *No private person is subjected to risks of this magnitude.*" (4 Cal. Law Revision Com. Rep. (1963) p. 817; italics added.)

It is readily discernible that a holding that Code of Civil Procedure section 1095 abridges the immunities granted in the Tort Claims Act would destroy the carefully wrought system of liabilities and immunities set forth therein. Since direct review of the licensing activities of the public entities is usually available through writ proceedings or other proceedings to review administrative action (legislative committee comment to § 818.4; Van Alstyne, Cal. Government Tort Liability, *supra,* at p. 510), all that a plaintiff would have to do to circumvent the immunity provisions of the Tort Claims Act would be to effect a mere change in his pleading designating it a petition for writ of mandamus rather than a complaint for damages. Considering the strongly worded legislative intent, cited above, most certainly the Legislature cannot be deemed to have intended to impose liability and abrogate immunities through writ proceedings or by maneuvering with the rules of pleadings and procedure.

We parenthetically note that in addition to the foregoing general principles, in the case at bench the imposition of damages under Code of Civil

Procedure section 1095 would not be feasible for another reason. It is recognized that the indemnification provision in Code of Civil Procedure section 1095 is for the protection of the employee only, and that a condition precedent to the operation of Code of Civil Procedure section 1095 is a judgment rendered against the employee.[6] In the instant case only the public entities were joined as defendants; consequently no judgment could be nor was rendered against any of the employees (cf. *County of Los Angeles* v. *Superior Court* (1965) 62 Cal.2d 839, 844 [44 Cal.Rptr. 796, 402 P.2d 868]).

We finally observe that *Ellis* v. *City Council* (1963) 222 Cal.App.2d 490 [35 Cal.Rptr. 317] does not militate against, or negate the conclusion reached here. In that case the city building inspector refused to issue a permit even though all conditions precedent to its issuance had been satisfied by appellant. In a mandamus action brought for issuance of permit and damages the court held that since the building inspector was under a mandatory, ministerial duty to issue the permit, he was liable for damages. However, the city council and the city attorney who had also been joined as defendants were held immune because their authority to force the issuance of the permit was discretionary (pp. 498-500).

By contrast, in the case at bench all functions relating to the revocation of the use permit were entirely discretionary. Furthermore, *Ellis* was decided on the authority of *Lipman* v. *Brisbane Elementary Sch. Dist., supra,* and related cases, not upon the Tort Claims Act. As indicated previously, the Tort Claims Act makes it unquestionable that the immunity for licensing activity prevails over the liability established by section 815.6 for failure to discharge a mandatory duty (legislative committee comment to § 818.4; Van Alstyne, Cal. Government Tort Liability, *supra,* § 5.58, p. 165).

We hold that the specific immunities provided for the public entities and public employees in sections 818.4 and 821.2 take precedence over the liabilities established in Code of Civil Procedure section 1095. Con-

---

[6]The pertinent portions of the Law Revision Commission comments read as follows: "An interesting compromise between liability and a waiver of immunity has been achieved in some 25 statutes. These provisions generally consist of a legislatively imposed duty on the public entity to pay tort judgments rendered against its officers or employees; but they do not constitute a waiver of the entity's immunity from liability. . . . [*Section 1095 and other statutes*] *expressly contemplate that the entity shall pay only after a judgment has been rendered against one of its officers or employees.* . . . They seem to contemplate that the employing entity must satisfy the judgment against its employee even where the entity could not itself have been held directly liable for the plaintiff's damages." (5 Cal. Law Revision Com. Rep. (1963) pp. 65-70; italics added.)

sequently, the public entities and public employees are accountable only under said sections and cannot be held liable for damages under section 1095 of the Code of Civil Procedure.

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 19, 1974.