Filed 2/18/21  In re K.D. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re K.D., a Person Coming Under the Juvenile Court Law. | C087645 |
| THE PEOPLE, | (Super. Ct. No. JDSQ17413) |
| Plaintiff and Respondent, | |
| v. | |
| K.D., | |
| Defendant and Appellant. | |

The minor appeals from the juvenile court's victim restitution order for $18,872.71 entered pursuant to wardship proceedings (Welf. & Inst. Code, §§ 602, 730.6).[1]  She contends the Yolo County Health and Human Services Agency (DHHS)

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

should be jointly and severally liable for the restitution, failure to do so violates her right to equal protection, and the order is not supported by substantial evidence. We shall affirm.

BACKGROUND

On July 4, 2017, the minor was a resident at the Advent Group Home in Morgan Hill. At around 1:00 p.m., she and two other female residents, S.M. and L.N., entered an office and confronted three staff members who were having a meeting. S.M., with the minor and L.N. standing behind her and holding pool cues, entered the office and demanded her cell phone. S.M. started throwing items around, and then took staff member E. Sanchez's cell phone from a desk. Sanchez told staff member S. Taylor to call 911; S.M. grabbed Taylor's phone from her. Sanchez took her cell phone from S.M.'s pocket, handed it to Taylor, and told Taylor and another staff member to leave and call the police. Taylor and the other counselor left the office, but S.M. prevented Sanchez from leaving.

After the other staff members left the office, S.M. continued to demand her phone from Sanchez while throwing items about the room. The minor handed a baseball bat to S.M., who used it to strike objects. S.M. also made numerous threats to beat Sanchez.

Sanchez was eventually allowed to open the safe and get S.M.'s phone. S.M. then used the bat to break a hole in the pantry door, which was then unlocked by reaching through the hole. L.N. opened the pantry door and took numerous contraband items.

Sanchez tried to leave the room but was blocked by the minor, who still held a pool cue. S.M. went to Sanchez with a raised bat and demanded the keys to the group home's van. S.M. struck Sanchez several times in the arm and shoulder as the minor encouraged her, telling her to "just fucking beat" Sanchez. The minor approached Sanchez, telling her they were not kidding about the keys, and struck Sanchez approximately three times in the knee with the pool cue. L.N. slapped Sanchez several

2

times after she still refused to surrender the keys. Sanchez eventually gave the key to S.M. The minor said they should "check this bitch" before they left, but S.M. said they should just go because the police were on the way.

As they left the home, the three girls were confronted by police officers, who ordered them to drop the weapons and get on the ground. L.N. complied. S.M. yelled at the officers, "Get back bitch! I have a gun too!" She got into the van on the driver's side and the minor entered on the passenger side. Driving the van, S.M. backed into the fence, drove over the group home's lawn, through bushes lining the property, and onto the street. She hit numerous vehicles and a home before she and the minor where taken into custody.

The following day, the minor executed a *Miranda* waiver and spoke to a police officer about the incident. She immediately expressed remorse for what happened. The minor admitted her involvement, including assaulting Sanchez with the pool cue. She and the other participants had stolen a bottle of vodka from a nearby store, emptied the vodka into water bottles, and then drank them before the crimes. She was afraid of S.M. and felt obligated to assault Sanchez after S.M. directed her to strike Sanchez with a pool cue.

The minor was a juvenile court dependent since December 2016. She had not spoken to her mother in over a year, and believed her father was a transient. The minor's social worker was in disbelief about the incident, as the minor never had prior law enforcement contact or had been a behavioral problem. She was one of the most well-behaved children in the social worker's caseload.

In Santa Clara County Juvenile Court, the minor admitted allegations in a section 602 petition that she committed assault with a deadly weapon and false imprisonment. (Pen. Code, §§ 245, subd. (a)(1), 236.) The matter was subsequently transferred to Yuba County, the minor's county of residence and the venue of her dependency case.

Yolo County Juvenile Court accepted the transfer on August 8, 2017. Following the probation department's recommendation, the juvenile court ruled the matter would proceed under section 241.1 for dual dependency and delinquency jurisdiction. Subsequently, the minor was found to be a ward of the court and placed on probation, with one of the conditions being payment of victim restitution in an amount to be determined later.

The August 2017 disposition memorandum noted the minor was attending school in juvenile hall, where she was considered to be a pleasure to have in class and was excelling in all assigned work. The report recommended out of home placement and continued dual supervision.

On January 29, 2018, the People filed a motion for restitution for five victims, totaling $24,273.21.

On February 21, 2018, the minor admitted violating probation by absconding.

The juvenile court terminated reunification services in the dependency case and set a selection and implementation hearing at the April 9, 2018, 12-month review hearing.

The minor was present at the May 30, 2018 restitution hearing. Minor's counsel contested the minor's responsibility to pay restitution for damage caused by the van that she did not drive. The juvenile court ordered the minor to pay $18,872.71, jointly and severally liable with S.M. and L.N. The minor's parents were not present at the hearing.

## DISCUSSION

### I

The minor contends DHHS should be jointly and severally liable for victim restitution because she was a dependent under its care and protection when she committed the acts underlying the restitution award.

Section 730.6, subdivision (a)(1) requires a minor to pay restitution for "economic loss as a result of the minor's conduct . . . ."

4

"In a case in which a minor is ordered to make restitution to the victim or victims, or the minor is ordered to pay fines and penalty assessments under any provision of this code, a parent or guardian who has joint or sole legal and physical custody and control of the minor shall be rebuttably presumed to be jointly and severally liable with the minor in accordance with Sections 1714.1 and 1714.3 of the Civil Code for the amount of restitution, fines, and penalty assessments so ordered, up to the limits provided in those sections, subject to the court's consideration of the parent's or guardian's inability to pay." (§ 730.7, subd. (a).)

According to the minor, DHHS was, in effect, her legal guardian for the purposes of section 730.7, and therefore should be jointly and severally liable for victim restitution under this statute. The minor acknowledges that DHHS is a public entity (Gov. Code, § 811.2 [" 'Public entity' includes . . . a county [and] public agency"]) and therefore immune "unless otherwise provided by statute." (Gov. Code, § 815, subd. (a).) She asserts that DHHS was under a statutory duty to promulgate a case plan to ensure she is protected and receives appropriate services, and, if placed out of the home, put in an environment best suited to meet her needs and interests. (§ 16501.1, subds. (b), (d).) The minor claims there were clearly problems with her placement in the Advent Group Home where she committed her crimes, as she was there with S.M., the presumed mastermind of the crimes. She argues her social worker should have been aware of this problem with her placement. In addition, she notes the record is not clear regarding how often the social worker visited her when she was in Morgan Hill. From this, she concludes DHHS and its employee violated its mandatory statutory duty and therefore was not immune from liability. (See Gov. Code, § 815.6.)

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.]" (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn.

5

omitted.)  A party who fails to raise an issue in the trial court generally forfeits the right to challenge the ruling on that basis on appeal.  (*Id*. at p. 1293, fn. 2.)

This is especially true where, as here, the new issues raise questions of fact.  The minor's claim turns on multiple unresolved factual issues such as whether S.M. was present when the minor was placed in Morgan Hill, whether S.M. induced or threatened the minor to participate in the crime, and, if so, could this have been discovered by DHHS through reasonable means, and how often did the social worker visit the minor.  The exception to the forfeiture rule for issues of law raised for the first time on appeal does not apply to unresolved factual issues.  (*Araiza v. Younkin* (2010) 188 Cal.App.4th 1120, 1127.)  Her contention is therefore forfeited.

## II

The minor contends failure to hold DHHS jointly and severally liable violates her right to equal protection.  She claims section 730.7 draws an unreasonable distinction between minors who have parents or guardians equally responsible for restitution and those like the minor who do not.[2]  The minor argues the two are similarly situated, but are treated unequally, as those with parents held liable for restitution have another means of satisfying the restitution award.  She finds this disparate treatment prejudices her by making her solely responsible for paying a large restitution amount.  Since probation can be revoked if a minor "willfully failed to pay or failed to make sufficient bona fide efforts to legally acquire the resources to pay" (§ 730.6, subd. (m)), the minor claims the

---

[2]  The Attorney General claims the minor's parents could be found jointly and severally liable for restitution.  Section 730.7 presumes a parent or legal guardian who has "joint or sole legal and physical custody and control of the minor" is rebuttably presumed to be liable for restitution imposed on the minor.  (§ 730.7, subd. (a).)  While their parental rights were intact when she committed her crimes, the minor was then a dependent of the juvenile court who was placed out of her parents' home, and her parents had neither legal nor physical custody of the minor when she committed the acts underlying the restitution award.  Accordingly, the parents could not and were not liable for the victim restitution.

6

disparate treatment involves the fundamental right of personal liberty, and should therefore be subject to the strict scrutiny test.  Finding section 730.7 does not withstand strict scrutiny analysis, she concludes DHHS should be jointly liable for the restitution award.

Since this claim, unlike the statutory claim, does not raise unresolved factual issues, we address it in spite of the minor's failure to raise it below.

" 'The equal protection guarantees of the Fourteenth Amendment and the California Constitution are substantially equivalent and analyzed in a similar fashion. [Citations.]' [Citation.]  We first ask whether the two classes are similarly situated with respect to the purpose of the law in question, but are treated differently.  [Citation.]  If groups are similarly situated but treated differently, the state must then provide a rational justification for the disparity.  [Citation.]  However, a law that interferes with a fundamental constitutional right or involves a suspect classification, such as race or national origin, is subject to strict scrutiny requiring a compelling state interest. [Citation.]" (*People v. Lynch* (2012) 209 Cal.App.4th 353, 358.)

We reject the minor's claim that a liberty interest is involved here.  A minor cannot have her probation terminated because of a simple inability to pay victim restitution; revocation requires a court finding that the minor willfully failed to pay or did not make sufficient bona fide efforts to do so.  There is no fundamental liberty interest implicated by terminating probation based on the willful failure to comply with a probation condition.  Accordingly, we employ the rational basis test.

"Where, as here, a disputed statutory disparity implicates no suspect class or fundamental right, 'equal protection of the law is denied only where there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose." ' [Citations.]  'This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve.  Nor must the underlying rationale be empirically substantiated.  [Citation.]  While the realities of the

7

subject matter cannot be completely ignored [citation], a court may engage in " 'rational speculation' " as to the justifications for the legislative choice [citation].  It is immaterial for rational basis review "whether or not" any such speculation has "a foundation in the record." ' [Citation.]  To mount a successful rational basis challenge, a party must ' "negative every conceivable basis" ' that might support the disputed statutory disparity. [Citations.]  If a plausible basis exists for the disparity, courts may not second-guess its ' "wisdom, fairness, or logic." ' [Citations.]" (*Johnson v. Dept. of Justice* (2015) 60 Cal.4th 871, 881.)

Victim restitution in delinquency cases serves the purposes of helping the minor's rehabilitation, deterring future misconduct, and making the victim whole.  (*In re Anthony M*. (2007) 156 Cal.App.4th 1010, 1017.)  Making the minor the primary person responsible for paying victim restitution has the rational basis of advancing those first two purposes.  Not holding liable parents who are unable to pay or those who did not have custody or control of the minor is a reasonable way of focusing responsibility on the cause of the harm, the minor.  DHHS' sovereign immunity is also supported by a rational interest, allowing government entities and their employees to perform their duties without fear of subsequently being found liable.  (See *O'Hagan v. Bd. of Zoning Adjustment* (1974) 38 Cal.App.3d 722, 730 ["[*t*]*o provide the utmost public protection, governmental entities should not be dissuaded from engaging in such activities by the fear that liability may be imposed if an employee performs his duties inadequately.  Moreover, if liability existed for this type of activity, the risk exposure to which a public entity would be subject would include virtually all activities going on within the community*"].)  Failing to hold DHHS jointly liable for restitution does not violate due equal protection.

### III

The minor's final contention is that the restitution award is not supported by substantial evidence.  The minor's crimes were related to the attack and false

imprisonment of Sanchez, who did not seek restitution. She asserts the damages underlying the restitution order were caused by S.M. when she drove the van. The minor claims S.M. was the ringleader and she was a mere passenger in the van. Finding insufficient evidence that her conduct was a substantial factor in the victims' losses, she concludes the restitution order should be stricken.

As explained in *In re Alexander A.* (2011) 192 Cal.App.4th 847, 853: "The California Constitution gives trial courts broad power to impose restitution on offenders for losses caused by their criminal conduct. (Cal. Const., art. I, § 28, subd. (b)(13)(A) [all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for those losses] [citation].) A victim's right to restitution is broadly and liberally construed. [Citations.] [¶] In proceedings involving minors, the juvenile court is vested with discretion to order restitution consistent with the goals of the juvenile justice system. [Citation.] The goal of the juvenile justice system is to provide minors under the jurisdiction of the court with care, treatment, and guidance that is consistent with their best interests and to hold them accountable for their behavior as appropriate under the circumstances, consistent with the interests of public safety and protection. (§ 202, subd. (b).) In enforcing, interpreting and administering the juvenile court law, the trial court also is to consider the safety and protection of the public, the importance of redressing injuries to victims and the best interests of the minor. (*Id.*, subd. (d).)"

The requirement of section 730.6, subdivision (a)(1) that a minor to pay restitution for "economic loss as a result of the minor's conduct" sets a floor, not a ceiling for the restitution that may be properly ordered by a juvenile court. (*In re T.C.* (2009) 173 Cal.App.4th 837, 844.) Thus: " 'The juvenile court has wide discretion to select appropriate conditions [of probation] and may impose " 'any reasonable condition that is "fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." ' " [Citations.]' [Citation.] In determining how

9

best to rehabilitate a minor, the juvenile court should consider the broadest range of information. [Citation.] Consistent with section 730, the juvenile court 'enjoys broad discretion to fashion conditions of probation for the purpose of rehabilitation and may even impose a condition of probation that would be unconstitutional or otherwise improper so long as it is tailored to specifically meet the needs of the juvenile. [Citation.] That discretion will not be disturbed in the absence of manifest abuse. [Citation.]' [Citation.]" (*Id*. at p. 845.)

" ' "[A] condition of probation which requires or forbids conduct which is not in itself criminal, and is for that reason most vulnerable to challenge, is nonetheless valid if the conduct required or forbidden either (a) has a relationship to the crime of which the offender was convicted, or (b) is reasonably related to future criminality." ' [Citations.]" (*In re T.C., supra*, 173 Cal.App.4th at p. 847.) A probation condition requiring the payment of restitution is subject to this rule. (*Ibid*.)

"That a defendant was not personally or immediately responsible for the victim's loss does not render an order of restitution improper. To the contrary, 'California courts have long interpreted the trial courts' discretion to encompass the ordering of restitution as a condition of probation even when the loss was not necessarily caused by the criminal conduct underlying the conviction. Under certain circumstances, restitution has been found proper where the loss was caused by related conduct not resulting in a conviction [citation], by conduct underlying dismissed and uncharged counts [citation], and by conduct resulting in an acquittal [citation].' [Citation.] Again, the question simply is whether the order is reasonably related to the crime of which the defendant was convicted or to future criminality." (*In re I.M*. (2005) 125 Cal.App.4th 1195, 1209.)

Such is the case here. There is substantial evidence showing the minor was a willing and active person in the attack on the group home staff, and, through her felonious assault and false imprisonment of Sanchez, helped secure the keys to the van which she and S.M. used to try to flee from the group home. The damage caused by the

10

van is also closely associated with the dismissed allegations of reckless driving (Veh. Code, § 2800.1) and unauthorized driving or taking of a vehicle (Veh. Code, § 10851). Substantial evidence supports a finding that the damage caused by the van was closely related to the minor's criminal conduct, and ordering the minor to pay victim restitution for this damage was not an abuse of discretion.

DISPOSITION

The judgment (order) is affirmed.

/s/
BLEASE, Acting P. J.

We concur:

/s/
MAURO, J.

/s/
RENNER, J.

11