[Civ. No. 10871. Fourth Dist., Div. One. Aug. 25, 1971.]

JOHN B. MORGAN et al., Plaintiffs and Respondents, v.
COUNTY OF SAN DIEGO et al., Defendants and Appellants.

## COUNSEL

Robert G. Berrey, County Counsel, and John McEvoy, Deputy County Counsel, for Defendants and Appellants.

Thomas A. Davies, Procopio, Cory, Hargreaves & Savitch and Gerald M. Dawson for Plaintiffs and Respondents.

## OPINION

**THE COURT.**—The County of San Diego and James J. Gilshian, its Director of Building Inspection, appeal from a judgment requiring them to renew a mobilehome park construction permit for six months. The permit was originally issued to the petitioners, John B. Morgan and John W. Gardner, Jr., but was not renewed.

The County concedes there is no substantial disagreement about the facts and also concedes the findings are supported by the evidence. It argues, as a matter of law, the findings do not support the conclusions of arbitrariness and abuse of discretion of the building inspection director.

In December 1969, Morgan and Gardner owned undeveloped property in Lakeside in San Diego County, on which they planned to build a mobilehome park. On December 26, 1969, they received a permit from the

County which, unless renewed, would expire six months later. The permit cost $5,493.

After December 30, 1969, the county zoning ordinance required all those who obtained permits before that date to begin "actual construction" within 60 days or the permit would be automatically cancelled. About February 10, 1970, in order to comply with this new requirement of the ordinance Morgan and Gardner installed underground plumbing, footings and a concrete slab for a laundry. This work, which cost about $2,000, was inspected on February 25th and February 27th and found satisfactory. By letter, dated March 4, 1970, County notified Morgan and Gardner the permit remained valid, and also announced the standard for renewal. The letter stated:

"If the work is diligently prosecuted, but not completed by June 27, 1970 [the expiration date], we will favorably consider granting you one six month time extension. If the work is prosecuted in a dilatory fashion we will not normally grant a time extension. . . ."

The mobilehome park Morgan and Gardner planned was quite large, and FHA financing was to be obtained. This was the first mobilehome park in San Diego County to be so developed. The total project value was estimated at $800,000. Delays were encountered and substantial revisions in original plans were necessitated before FHA requirements were satisfied. In particular, FHA was concerned about the sewer problem. We note also one of FHA's requirements was a building permit must have been issued before a project could be submitted to it for approval.

. About April 20, 1970, Morgan and Gardner went to see Gilshian and told him of the problems encountered. They said they were working with FHA and were not in a position to start immediately. Gilshian replied, ". . . if this is the case, I don't want you to spend any more money on your project until I hear from the County Counsel's Office."

In mid-April, plans and specifications cleared FHA on the local level. This generated a new wave of activity in Los Angeles, where the commitment was finally issued in late May or early June.

On May 8, however, Gilshian wrote to Morgan and Gardner and said there was no reasonable basis to grant an extension of the permit, because the amount of construction which had taken place did not justify it. He wrote, "The construction effort has been dilatory, rather than diligent."

Gilshian's standard for extending the permit involved going out to the site and making the determination there upon what could be seen and then decide whether the project was being actively pursued. Gilshian testified

he established this standard, "because it is something we can measure on sight in the field." Gilshian adhered to this standard in deciding not to renew Morgan and Gardner's permit, even though he received a letter from them requesting an extension, which told of the FHA problems. Gilshian put Morgan on notice actual construction was his sole measuring criterion.

As simple as this standard appears, Gilshian acknowledged he did not apply it to everyone. Gilshian testified on two occasions he extended permits on the basis of discussions with people which satisfied him they had financing, were ready to go ahead and had a schedule.

Nevertheless, in Morgan and Gardner's case, Gilshian testified he did not consider the amount expended for plans, which he estimated at seven to eight thousand dollars, and did not consider the amount spent for FHA approval.

At the trial, Gardner testified he was ready to begin construction and could complete it in six months.

The trial court concluded Gilshian's failure to consider the extent of preparation by petitioners, their expenditures of substantial sums, or their ability to complete the project in six months constituted an abuse of his discretion as Director of Building Inspection.

As noted above, the County admits the evidence supports the findings, but argues the findings do not justify the conclusions.

Health and Safety Code section 18509 provides mobilehome park construction permits expire within six months from issuance date, provided, however, "the enforcement agency may extend [the] expiration date . . . for a reasonable time." The County takes the position "may" is a permissive term and the code confers not a mandatory, but only a discretionary duty respecting permit renewals. ■ The County then states the familiar rule controls, that is, "mandamus will not lie to control the discretion exercised by a public officer or board [citation], it will lie to correct an abuse of discretion by such officer or board. [Citations.]" (*Baldwin-Lima-Hamilton Corp.* v. *Superior Court*, 208 Cal.App.2d 803, 823 [25 Cal.Rptr. 798].)

Generally, administrative boards and officers are allowed wide latitude to "work out their problems with as little judicial interference as possible." (*Lindell Co.* v. *Board of Permit Appeals*, 23 Cal.2d 303, 315 [144 P.2d 4] citing *Maxwell* v. *Civil Service Commission*, 169 Cal. 336, 339 [146 P. 869].)

Courts intervene, however, and say discretion has been abused when the challenged decision is shown to "exceed the bounds of reason, all of the

circumstances before it being considered." (*State Farm etc. Ins. Co.* v. *Superior Court,* 47 Cal.2d 428, 432 [304 P.2d 13].)

██ Under the facts and circumstances in this case Gilshian abused his discretion, as building inspector in at least three ways, in failing to renew the permit.

██ First, an estoppel exists. The evidence is uncontradicted on April 20, Gilshian told Morgan and Gardner not to spend any more money on the project until he heard from the County Counsel's Office. Over two months remained before the permit expired—two months within which construction could and might have proceeded had Morgan and Gardner felt it was necessary to protect their permit. As a matter of law, the County and Gilshian are estopped from asserting Morgan and Gardner's construction effort was dilatory since Gilshian's actions could well have been a substantial reason why no further construction occurred (Evid. Code, § 623; *City of Imperial Beach* v. *Algert,* 200 Cal.App.2d 48, 51-53 [19 Cal.Rptr. 144]; 4 Witkin, Summary of Cal. Law (1960) p. 2871 and cases cited).

██ Second, Gilshian conceded he did not apply his purported standard of diligent or dilatory construction effort uniformly. In two other cases, in which he stated he was personally satisfied permittees were ready to proceed, permits were renewed. Thus, in some instances, Gilshian's so-called standard gave way when other facts, unrelated to construction, met his previously undisclosed and unapparent level of personal satisfaction. By late May or early June, having received their FHA commitment, Morgan and Gardner were ready to proceed. This was before expiration of the permit but after Gilshian notified them it would not be renewed.

██ Third, Gilshian's purported standard is unreasonable. ██ The purpose of a statute or ordinance providing an expiration date for a permit when work has not commenced or a use established "is to prevent one from reserving land for future purposes when that person has no good faith intent to presently commence upon the proposed use." (*Upton* v. *Gray,* 269 Cal.App.2d 352, 357 [74 Cal.Rptr. 783].) ██ The fallacy of Gilshian's standard is it bears no necessary or direct relationship to whether a good faith intent to commence upon the use exists. As Gilshian himself conceded, the extent of construction alone does not invariably show whether a permittee is ready to proceed. In a complex and expensive project, such as the one undertaken here by Morgan and Gardner, much work must be done on the drawing board, in governmental and banking offices before the pick and shovel may be wielded and mortar poured.

██

Morgan and Gardner were not sitting idly upon the land, but were proceeding diligently to work out design plans with FHA which were a prerequisite to an FHA commitment. Gilshian knew this.

Gilshian's purported standard of on-site construction was adopted because it was easy to apply. As he said, "It is something we can measure on sight in the field."

The law cannot approve a building inspector exalting his and his staff's convenience to a general rule determining whether a permit will be renewed.

Judgment affirmed.

A petition for a rehearing was denied September 15, 1971, and appellants' petition for a hearing by the Supreme Court was denied October 21, 1971.