[Civ. No. 37645. First Dist., Div. One. Aug. 11, 1976.]

CITY AND COUNTY OF SAN FRANCISCO,
Plaintiff and Respondent, v.
ANTHONY B. PACE et al., Defendants and Appellants.

**COUNSEL**

Fitzgerald, Johnson, Berg & Edgar and William R. Edgar for Defendants and Appellants.

Thomas M. O'Connor, City Attorney, Edw. C. A. Johnson and Dianne K. Barry, Deputy City Attorneys, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.**—Appellants Pace had been the owners of two small San Francisco buildings, one with three residential units and the other with two, for more than twenty years. They neither resided, nor intended to reside, in either. And they had never held an electrical contractor's license according to the contractors license law (div. 3, ch. 9, of the Bus. & Prof. Code). Appropriate municipal authority ordered certain improvements and repairs, including electrical work, on the buildings. Anthony Pace's application for permits to do the required electrical work was refused by the city's central permit bureau, for the expressed reason that it was not permitted by sections 25.2 and 25.5 of the City of San Francisco's Electrical Code.

Section 25.2, as relevant, provides that a permit to do electrical work will be issued only "to a *home-owner subject to Section 25.5* . . . or to [a] duly licensed [electrical] contractor . . . ." (Italics added.)

Section 25.5, in relevant part, authorizes such a permit "to perform electrical work in, on or about any building occupied by the applicant as a single family dwelling . . . provided the work is done by the owner who

has demonstrated, to [a designated city official] his qualifications to satisfactorily perform electric wiring in the dwelling which is, or is intended to be occupied by him."

Pace appealed the denial of his permit application to the city's board of permit appeals (hereafter "Board"), which had been created by the city's charter. Section 3.651 of the charter, as relevant to the issues before us, provided:

"Any applicant for a permit . . . who is denied such permit . . . by the department authorized to issue same . . . may appeal to the board of permit appeals. Such board shall hear the applicant . . . or other interested parties, as well as the head or representative of the department . . . refusing to issue such . . . permit, . . . After such hearing . . . it may concur in the action of the department authorized to issue such . . . permit, or . . . may overrule the action of such department and order that the permit . . . be granted, . . ."

Testimony produced before the Board by Pace disclosed that he had "been in construction . . . for the last 13 years," and that he had constructed his own home in an adjoining county "with my own labor and sweat. I have done the electrical work, the roofing work" with official permission. Pace further testified: "I would perform this work according to Code, Code specifications and material and workmanlike mechanical way agreeable to them, no question about it." And he said he "understood" the procedure and that he would "have to take an examination."

The Board ordered the requested permits to issue "with the stipulation that he passes the electrical home owner's" examination.

In the superior court the city attacked the Board's ruling as being void, and in excess of its jurisdiction. The court agreed, and judgment was entered accordingly. The appeal before us was taken by Anthony and Ida Pace from that judgment.

The issue presented is whether: "The Board of Permit Appeals properly determined that appellant was entitled to permits for inspection to enable him to personally perform the electrical repairs to his properties."

■ The Board is " 'vested with a high discretion and its abuse must appear very clearly before the courts will interfere.' " (*Lindell Co.* v. *Board of Permit Appeals,* 23 Cal.2d 303, 315 [144 P.2d 4].) This discretion embraces broad fact-finding powers in the exercise of the Board's independent judgment. It may differ with the agency, whose ruling has been appealed to the Board, on the resolution of controverted factual matter and, subject of course to judicial review, on the proper interpretation of the city's charter, and its ordinances, codes and regulations. (See *City & County of S.F.* v. *Superior Court,* 53 Cal.2d 236, 247-252 [1 Cal.Rptr. 158, 347 P.2d 294]; *Lindell Co.* v. *Board of Permit Appeals, supra,* 23 Cal.2d 303, 313-315; *Board of Permit Appeals* v. *Central Permit Bureau,* 186 Cal.App.2d 633, 639-641 [9 Cal.Rptr. 83].)

But there nevertheless "can be no doubt that the board of permit appeals is bound by the relevant law as enunciated by appropriate ordinances." (*Board of Permit Appeals* v. *Central Permit Bureau, supra,* 186 Cal.App.2d 633, 640; and see *City & County of S.F.* v. *Superior Court, supra,* 53 Cal.2d 236,.250-251.)

Here the language of the ordinance (Electrical Code, §§ 25.2, 25.5) is clear. According to its·terms, one in the position of Pace is not eligible for a permit to perform electrical work. And we do not understand Pace to make any contrary contention as to the intent of the ordinance.

■ Instead, Pace argues that the ordinance "is unreasonable, arbitrary and discriminatory, and hence unconstitutional as a violation of [his] substantive due process rights . . . and a denial of equal protection of the laws."

■ A classification created for legislative purposes must be reasonable and not arbitrary. (*Zeilenga* v. *Nelson,* 4 Cal.3d 716, 721 [94 Cal.Rptr. 602, 484 P.2d 578].) But such a classification will not be deemed "unreasonable, arbitrary and discriminatory" if it is based upon some difference, or distinction, having a substantial relation to a legitimate public purpose. (*Brown* v. *Merlo,* 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]; *In re Ricky H.,* 2 Cal.3d 513, 522 [86 Cal.Rptr. 76, 468 P.2d 204].) The classification will not be set aside if any state of facts may reasonably be conceived to justify it. (*Estate of Horman,* 5 Cal.3d 62, 75 [95 Cal.Rptr. 433, 485 P.2d 785].) ■ And the decision of a legislative body, as to what is a sufficient distinction to

warrant the classification, will not be overthrown by the courts unless it is palpably arbitrary. (*Estate of Horman, supra.*)

 Section 2 of San Francisco's Electrical Code states: "The purpose of this Code is to safeguard life and limb, health and public welfare, buildings, structures and their contents by establishing minimum legal requirements for the installation, maintenance, extension, repair, alteration, and use of electricity and electrical equipment . . . ."

The city's legislative body reasonably determined that this obviously valid purpose could best be effectuated by requiring such work to be done by qualified persons licensed under, and according to the standards of, the contractors license law. An objective of that law is to protect the general public respecting structural improvement to real property wherein special skill, training and ability are required. (*Conderback, Inc.* v. *Standard Oil Co.,* 239 Cal.App.2d 664, 677 [48 Cal.Rptr. 901]; *Bowline* v. *Gries,* 97 Cal.App.2d 741, 743 [218 P.2d 806].)

Nevertheless, the legislative body recognized a countervailing public interest in the enactment of the Electrical Code. It seemed reasonable that an unlicensed person wishing to do electrical work upon his own home should be permitted to do so upon demonstration of the necessary ability. Yet the same consideration did not necessarily extend to all property owners who wished personally to make such potentially hazardous improvements upon their own property. The legislative body was "'not bound, in order to adopt a constitutionally valid [ordinance], to extend it to all cases which might possibly be reached, but [was] free to recognize degrees of harm and to confine its regulation to those classes of cases in which the need [was] deemed to be the most evident.'" (*In re Ricky H., supra,* 2 Cal.3d 513, 521-522.)

We conclude that sections 25.2 and 25.5 of the city's Electrical Code, as pertinent to this appeal, are neither unreasonable, arbitrary or discriminatory, nor do they deny Pace due process of law or the equal protection of the laws.

Pace's argument that the Electrical Code provisions should be treated as in the nature of a zoning ordinance, subject to variances and exceptions, with "each case to be determined on its facts" is found to be unpersuasive, and unsupported by authority.

From all of the foregoing it appears that the Board's disputed order was in excess of its jurisdiction, and the superior court's ruling thereon without error.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.