[Civ. No. 45375. First Dist., Div. Three. Mar. 11, 1981.]

COURT HOUSE PLAZA COMPANY, Plaintiff and Appellant, v. CITY OF PALO ALTO et al., Defendants and Respondents.

COUNSEL

Robert E. Cartwright and Cartwright, Sucherman, Slobodin & Fowler for Plaintiff and Appellant.

Roy C. Abrams, City Attorney, Louis B. Green, Assistant City Attorney, and Fred Caploe for Defendants and Respondents.

OPINION

SCOTT, J.—Court House Plaza Company appeals from a judgment denying its petition for a writ of mandamus directing respondent City of Palo Alto to issue it use and building permits and an extension of time for the construction of parking facilities for a six-story addition to its existing four-story building.

The chronology of this case spans some 12 years beginning with the adoption by the City of Palo Alto of ordinance No. 2224 on December 28, 1964, establishing a planned community zoning district. By its terms appellant was authorized to construct a building in two phases. The first phase (hereafter Phase 1) required construction of the first four stories on parcel A and the first two levels of a parking structure on parcel C to begin by January 28, 1967. In the second phase (hereafter Phase 2) construction was to begin by October 31, 1976, on six additional stories of the building and on additional levels of the parking garage. Only the four-story building has been completed.

In August 1965 the city was informed that another part of appellant's property was to be condemned by the County of Santa Clara for a county road project (Page Mill-Birch Street realignment) which would interfere with appellant's plans to construct a parking structure. Accordingly, on December 13, 1965, the city approved construction of Phase 1 with 107 temporary offstreet parking spaces in lieu of the permanent parking structure. Thereafter, on June 14, 1966, a building permit was issued for construction of the four-story building, almost a year after an application for the permit had been filed. By August 1967, the construction of Phase 1 had been completed. On December 11, 1967, the city gave appellant until December 13, 1968, to begin construction of the parking structure. The four-story building was fully functioning and substantially leased by the spring of 1968.

In March of 1970, use and building permits for Phase 2 were approved. Other than fabrication of the steel and manufacture of the elevators, no construction work was undertaken on either the six-story addition or the parking structure, and following the granting of extensions of the permits, both permits expired.

In August of 1970, the County of Santa Clara completed its condemnation of a portion of parcel C for the Page Mill realignment. In 1973 a 50-foot height limit was enacted for all buildings in Palo Alto except those in planned community districts.

Appellant requested a zone change on June 30, 1976, to resolve the parking problem which ensued from the county's partial taking of parcel C. Then on August 11, 1976, appellant requested a three-year extension of the development plan, which was denied by the planning commission on August 25, 1976. No appeal was taken from this denial. Instead, appellant applied for a use permit on August 30, 1976. On the

next day, apparently mindful that under the original zoning ordinance appellant was to have commenced construction by October 31, 1976, appellant filed an application for a building permit on the basis of the 1968 plans. The building inspector refused to issue a building permit on the ground that the plans did not conform to the then existing building codes. The use permit was also held up due to the 14-foot height variation.

Appellant sought a one-year extension on October 1, 1976. The request was denied by the planning commission and this was appealed to the city council. On October 28, 1976, the city building inspector denied appellant's request for an interim building permit on the grounds that no use permit had been granted and no plans for construction of a parking structure had been submitted. Finally, on December 6, 1976, following a public hearing, the city council denied appellant's request for a one-year extension.

It is the city's denial of appellant's application for use and building permits for the Phase 2 construction, and the denial of appellant's request for a one-year extension of its time to act under the zoning ordinance that are the subject matter of this litigation. Appellant then filed a petition in superior court for a writ of mandate, which was denied. This appeal followed.

Appellant sought relief from the trial court under sections 1085 and 1094.5 of the Code of Civil Procedure. The court concluded that while only section 1085 was applicable, appellant failed to establish its right to relief under either section 1085 or 1094.5.

I. DENIAL OF EXTENSION OF TIME TO COMPLY WITH ZONING ORDINANCE

■ Appellant contends that the action of the city on its application for a one-year extension was adjudicatory in nature and as such was reviewable under the administrative mandamus provision of Code of Civil Procedure section 1094.5. Judicial review of an adjudicatory act of an administrative agency is a determination of whether the agency has proceeded without or in excess of jurisdiction, whether there was a fair trial, whether the findings of an agency were supported by substantial evidence in light of the entire record. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32 [112 Cal.Rptr. 805, 520 P.2d 29].) However, administrative mandamus review of actions by administrative agencies is limited to those instances in which a

hearing is *required by law* before the administrative agency. It is the facts adduced at that hearing and the findings made thereon which are the subject of judicial review under administrative mandamus. In the instant case, however, it appears that the actions in denying appellant's request for a one-year extension to comply with the zoning ordinance followed from a proceeding before the City of Palo Alto, wherein no hearing was required by law. The Palo Alto Municipal Code, section 18.68.080(D) provides that "for good cause shown by the property owner ... the planning commission, *without a public hearing*, may recommend a change or extension of the time limits imposed by the development schedule. Upon receipt of the recommendation ... the city council may change or extend the time limits." (Italics added.) The statute confers authority upon the planning commission to make a determination of whether good cause exists without providing a hearing. This determination is merely advisory in that the city council ultimately acts upon the question and it may, but is not required to, adopt the recommendation. Although the city council held a public hearing in the instant case, none was *required by law.*

Since the ordinance provides that no hearing is required, administrative mandamus is not the proper remedy. Therefore, the action of respondent must be evaluated under the rules applicable to traditional mandamus pursuant to Code of Civil Procedure section 1085.

■ Actions taken by respondent in its legislative capacity are reviewable under Code of Civil Procedure section 1085, the traditional writ of mandate. Judicial review is limited to an examination of the proceedings before the agency to determine whether its action has been arbitrary or capricious, or entirely lacking in evidentiary support, or whether it has failed to follow the procedure and give the notices required by law. (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 833 [27 Cal.Rptr. 19, 377 P.2d 83]; *Patterson* v. *Central Coast Regional Com.* (1976) 58 Cal.App.3d 833, 840 [130 Cal.Rptr. 169].)

We turn now to a determination of whether there is substantial evidence to support the trial court's determination that the denial of appellant's request for a one-year extension of the zoning ordinance was not arbitrary and capricious.

In support of these arguments appellant alleges that (1) the city acted arbitrarily in requiring appellant to begin the administrative process anew despite its vested rights, (2) the city granted extensions in

virtually all other cases in which extensions were required, and (3) the planning commission and the city council applied the wrong standard in adjudging its request for an extension by substituting a "changed circumstances" standard for the "good cause" standard set forth in Palo Alto Municipal Code section 18.68.080(D).

The denial of the one-year extension will be upheld if there is any reasonable basis in fact to support the legislative determination of the city council. (*Lockard* v. *City of Los Angeles* (1949) 33 Cal.2d 453, 460-461 [202 P.2d 33, 7 A.L.R.2d 990], cert. den. 337 U.S. 939 [93 L.Ed. 1744, 69 S.Ct. 1516]; *Ensign Bickford Realty Corp.* v. *City Council* (1977) 68 Cal.App.3d 467, 475 [137 Cal.Rptr. 304].) "Every intendment is in favor of the validity of the exercise of the police power." (*Id.*, at p. 474.)

■ In order to have obtained an extension of time appellant was required to establish "good cause" for its failure to comply with the original time limits imposed by the development schedule. (Palo Alto Mun. Code, § 18.68.080(D).) The city council denied the extension on several grounds. One councilman indicated that traffic would likely be increased, creating undesirable effects. He also believed that general changes in Palo Alto embodied in the comprehensive plan supported denial of the extension. Another council member thought the "fragility" of the residential character of the neighborhood would be threatened by the high rise. Still another council member stated that the time given the appellant within which to construct the 10-story building was longer than any other that had been granted. Thus, there is substantial evidence to support the trial court's determination that the decision of the city council was not arbitrary and capricious.

■ Nevertheless, appellant contends that the city's denial was discriminatory when compared with the city's actions as to numerous other projects for which time extensions were requested and granted. Two declarations were submitted to the trial court which indicate that between 1961 and 1976, eleven planned community property owners were granted an extension of the development schedule. Two of the planned community districts were particularly similar to appellant's project.

■ It is true that persons or entities similarly situated may not be unjustly discriminated against by the government. (Cal. Const., art. I, § 7; *City of Bakersfield* v. *Miller* (1966) 64 Cal.2d 93, 103 [48 Cal.Rptr. 889, 410 P.2d 393], cert. den. 384 U.S. 988 [16 L.Ed.2d

1005, 86 S.Ct. 1890]; see also *Yick Wo* v. *Hopkins* (1885) 118 U.S. 356 [30 L.Ed. 220, 6 S.Ct. 1064].) However, a classification will not be deemed unreasonable and discriminatory "if it is based upon some difference, or distinction, having a substantial relation to a legitimate public purpose. [Citations.] The classification will not be set aside if any state of facts may reasonably be conceived to justify it. [Citation.] And the decision of a legislative body, as to what is a sufficient distinction to warrant the classification, will not be overthrown by the courts unless it is palpably arbitrary." (*City & County of San Francisco* v. *Pace* (1976) 60 Cal.App.3d 906, 910-911 [132 Cal.Rptr. 151].)

■ The trial court had before it the declarations alluded to above and numerous exhibits in support thereof. After reviewing that evidence the court determined that in light of all the circumstances the denial of the extension was reasonable and that the city had not discriminated against appellant by denying the request.

■ Contrary to appellant's contention, the motives of the members of the city council for denying an extension are irrelevant. (See *McCarthy* v. *City of Manhattan Beach* (1953) 41 Cal.2d 879 [264 P.2d 932].)

■ Appellant's argument that the city council failed to apply the correct standard in determining whether an extension should be granted also lacks merit.

According to Palo Alto Municipal Code section 18.68.080(D), extensions need not be automatically granted upon the showing of "good cause," nor does this section limit the city council's determination to consider matters going only to "good cause." In order to obtain the extension an applicant *first* must establish sufficient cause for being unable to comply with the deadline specified in the development schedule. But even if such cause is shown, the council still has discretion to deny the request for additional time where other reasons are of significant magnitude to vitiate the applicant's showing of good cause.

In the present case, the minutes of the city council hearing indicate that the council recognized that it could in its discretion grant the extension if good cause were shown. However, it is also apparent that the council did not feel that such had been established, since appellant had failed to diligently pursue completion of Phase 2. As previously discussed, there were a number of factors making construction of Phase 2 undesirable at that time without further evaluation.

We conclude that the denial of the time extension was neither unreasonable, arbitrary or discriminatory, nor does it deny appellant due process or the equal protection of the laws. There is no contention that respondent failed to follow the procedures and give the notices required by law.

## II. DENIAL OF USE AND BUILDING PERMITS

Appellant also challenges the city's denial of the use and building permits.

■ Ordinary mandamus is particularly appropriate to compel the issuance of building and use permits since they are generally ministerial in character. (*Ellis* v. *City Council* (1963) 222 Cal.App.2d 490, 498 [35 Cal.Rptr. 317]; *Sunset View Cemetery Assn.* v. *Kraintz* (1961) 196 Cal.App.2d 115, 116-124 [16 Cal.Rptr. 317]; *McCombs* v. *Larson* (1959) 176 Cal.App.2d 105, 106-107 [1 Cal.Rptr. 140]; *Palmer* v. *Fox* (1953) 118 Cal.App.2d 453, 455-459 [258 P.2d 30]; cf. *Agnew* v. *City of Los Angeles* (1961) 190 Cal.App.2d 820, 827 [12 Cal.Rptr. 507].)

Palo Alto has adopted section 302 of the Uniform Building Code, which provides that a building permit will be issued if the development plans submitted with the application comply with existing laws. The issuance of the permit is not left to the discretion of the building inspector; it is only when the plans are not up to code that the permit may be denied. Section 1085 applies.

Likewise, Palo Alto Municipal Code section 18.68.040 states that upon payment of a fee "a use permit *shall* be issued without a public hearing if the proposed structure or structures comply with the development plan and conditions thereof." (Italics added.) It is apparent that issuance is mandatory once it is determined that the applicant has complied with a previously approved development plan. The fact that the zoning administrator may impose conditions on the permit does not change the essentially ministerial character of the zoning administrator's function.

### A. *Contract right to permits*

■ Appellant contends that denial of building and use permits was arbitrary and capricious because the original zoning ordinance adopted

in 1964 was tantamount to a contract with appellant permitting it to complete a 10-story building.

However, the contract theory of zoning was expressly disapproved in *Richter* v. *Board of Supervisors* (1968) 259 Cal.App.2d 99, 108 [66 Cal.Rptr. 52], where the court stated: "It is settled that zoning regulations are not contracts and may be modified from time to time [citations]. Thus, a county or municipality may amend its zoning ordinance as new and changed conditions warrant and require such revisions [citations]." (See also *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546].)

When the city enacted ordinance No. 2224, it reserved the right to pass on details before construction could begin and to determine that appellant's plans were in compliance with all current codes at the time the permit was to be issued. Appellant assumed the risk that new or amended regulations not contemplated at the time the project began might prevent the construction appellant originally planned.

B. *Vested right to permits*

■ In the alternative, appellant urges that denial of the building and use permits was arbitrary in view of its vested rights to construct the 10-story building. Appellant contends that it acquired vested rights on any of the following grounds: (1) by overbuilding Phase 1 to accommodate Phase 2, (2) by making substantial expenditures in good faith reliance on the 1970 building permit, and/or (3) by making good faith expenditures in the absence of a building permit.

■ The California Supreme Court has stated the vested rights rule as follows: "It has long been the rule in this state and in other jurisdictions that if a property owner has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit. (*Dobbins* v. *City of Los Angeles* (1904) 195 U.S. 223 [49 L.Ed. 169, 25 S.Ct. 18]; *Trans-Oceanic Oil Corp.* v. *Santa Barbara* (1948) 85 Cal.App.2d 776, 784 [194 P.2d 148].)" (*Avco Community Developers, Inc.* v. *South Coast Regional Com., supra,* 17 Cal.3d at p. 791.) However, "neither the existence of a particular zoning nor work undertaken pursuant to governmental approvals preparatory to construction of buildings can

form the basis of a vested right to build a structure which does not comply with the laws applicable at the time a building permit is issued." (*Avco*, at p. 793.)

■ The vested rights doctrine was founded upon an estoppel theory. "Where a building permit to erect a specific type of building is issued by a county or city and the permittee acts upon it and incurs obligations, or in good faith commences construction, his rights become vested and the governmental body is thereafter estopped to set up a zoning ordinance subsequently enacted. [Citation.] Where no such permit has been issued, it is difficult to conceive of any basis for such estoppel." (*Anderson* v. *City Council* (1964) 229 Cal.App.2d 79, 89 [40 Cal.Rptr. 41].)

Here appellant maintains that in constructing Phase 1 it expended in excess of $450,000 to accommodate Phase 2. The foundation and structural steel used in Phase 1 are adequate to support all 10 stories. The plans and specifications also included many features which would only be required for a completed ten-story building, such as two additional elevator shafts and a machine room in the basement to accommodate additional elevator machinery. By virtue of these expenditures, which were made in good faith reliance on valid building and use permits, it acquired vested rights to construct the 10-story building.

We do not question the appellant's good faith in making these expenditures nor do they appear insubstantial, but we cannot accept that the Phase 1 permits and the expenditures made in reliance thereon conferred an unalterable right to complete Phase 2. The Phase 1 permits were expressly limited to construction of the first four stories and basement. Upon completion of that portion of the building the permits were marked "completed."

Once the appellant here had made substantial expenditures in reliance on the Phase 1 permits, it acquired a vested right to complete the four-story building "in accordance with the terms of the permit" (*Avco*, 17 Cal.3d at p. 791), but no such right ripened as to Phase 2 for which no permits or other final approvals were obtained. Appellant essentially assumed the risk that the building might not be completed as planned since it was never exempted from the requirement of further permits and approvals before the six-story addition could be constructed, or from complying with all subsequently enacted codes.

■ Appellant next contends that it obtained vested rights to complete the 10-story building under the Phase 2 building and use permits issued in 1970, which permits ultimately expired. In reliance thereon, appellant states it expended over $500,000 on preparation of the plans and specifications and the purchase of structural steel and elevators for construction of Phase 2. This figure was in addition to the $450,000 it had already spent on Phase 1 in order to accommodate Phase 2.

Respondents contest appellant's characterization of its expenditures, claiming that most of appellant's Phase 2 debts were incurred before the building permit was issued in February 1970.

The trial court found that the Phase 2 construction debts were incurred some 18 months before the first building permit for Phase 2 was issued. In reviewing the record it appears that appellant's then managing partner ordered complete architectural drawings early in 1968, and they were completed by fall. The steel and elevators were ordered in late 1969. Appellant was thus contractually bound even before it applied for the building permit on December 1, 1969. Notwithstanding that some of the steel and elevators may have been fabricated after February 16, 1970, appellant did not rely on an existing permit when it obligated itself for the fabrication. Appellant's expenditures were not made in reliance on an existing permit but rather in anticipation of one.

Appellant attempts to avoid the conclusion that no vested rights accrued under its 1970 permits by arguing that if the city had acted promptly the building permit should have issued considerably sooner and most of the expenditures would have been made *following* the issuance of the permit. Appellant cites *California Central Coast etc. Conservation Com. v. McKeon Constr.* (1974) 38 Cal.App.3d 154 [112 Cal.Rptr. 903], in support of its position. There the court in dictum stated that vested rights would have accrued if the building permit had not been abitrarily withheld for almost eight months after an application had been made.

Here the delay which prevented appellant from acquiring a permit earlier than it did was the smoke-proof tower controversy which arose on December 22, 1969, when the city fire marshal determined that certain building code requirements had not been met. The city had previously, in 1965, resolved a similar dispute in appellant's favor within three weeks time by permitting construction of Phase 1 with an

interior smoke-proof tower. The 1969 controversy lasted approximately six weeks and was also resolved in appellant's favor.

Unlike *McKeon*, the short delay here was not arbitrary and there was no pretext to prevent appellant from obtaining its building permit. There are no grounds for holding that a building permit "should have been" issued earlier, thus allowing vested rights to accrue. Furthermore, the 1970 permits expired without appellant's having built in accordance with their terms. Appellant cannot six years later assert that it continues to have a vested right to the expired permit.

III. CONSPIRACY TO DELAY BUILDING

 Appellant next urges a "conspiracy" among the officials and staff of Palo Alto arose in 1972 to delay and thwart completion of its project. Therefore, such actions estop the city from denying appellant the use and building permits and the extension of time to complete its building.

It is well settled that discriminatory conduct by land use agencies may engender an estoppel independently of a developer's acquisition of a vested right. (See *Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 124-125 [109 Cal.Rptr. 799, 514 P.2d 111]; *Raley* v. *California Tahoe Regional Planning Agency* (1977) 68 Cal. App.3d 965, 978-982 [137 Cal.Rptr. 699]; *Morgan* v. *County of San Diego* (1971) 19 Cal.App.3d 636, 641 [97 Cal.Rptr. 180]; *G & D Holland Construction Co.* v. *City of Marysville* (1970) 12 Cal.App.3d 989, 994-995 [91 Cal.Rptr. 227]; *Russian Hill Improvement Assn.* v. *Board of Permit Appeals* (1967) 66 Cal.2d 34, 37, fn. 5 [56 Cal.Rptr. 672, 423 P.2d 824].)

Appellant cites various evidence which he contends supports his theory that there was conspiracy among the employees of respondent city to thwart completion of the project. The evidence was conflicting as to why various acts took place and appellant contends this supports his theory of conspiracy. The city employees denied any efforts made for the purpose of delaying, frustrating or otherwise thwarting the project. The trial court did not find a conspiracy from the conflicting testimony, and there is substantial evidence to support that finding.

 Appellant's final argument sounds in inverse condemnation. While both the federal and state Constitutions provide that private

property may not be taken or damaged for public use without payment of just compensation to its owner (Cal. Const., art. I, § 19; U.S. Const., 5th Amend.), a "mere diminution" in property value due to a zoning action is not compensable. (*Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266, 273-274 [157 Cal.Rptr. 372, 598 P.2d 25], affd. (1980) 447 U.S. 255 [65 L.Ed.2d 106, 100 S.Ct. 2138].)

Judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied April 10, 1981, and appellant's petition for a hearing by the Supreme Court was denied May 13, 1981.