[No. A023655. First Dist., Div. Three. Dec. 24, 1984.]

MARINA COUNTY WATER DISTRICT, Plaintiff and Appellant, v. STATE WATER RESOURCES CONTROL BOARD, Defendant and Respondent;
CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD et al., Real Parties in Interest and Respondents.

COUNSEL

Robert W. Tuttle for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, R. H. Connett, Assistant Attorney General, and Allene C. Zanger, Deputy Attorney General, for Plaintiff and Respondent and for Real Parties in Interest and Respondents.

OPINION

WHITE, P. J.—

*Introduction*:

This is an appeal by a county water district (Marina) from the denial of a writ of mandamus to compel the State Water Resources Board (hereafter

State Board) to invalidate an order it issued upholding the action of the California Regional Water Quality Control Board, Central Coast Region (hereafter Regional Board or Board) in deciding not to revise a "zone of prohibition" it had established in Monterey Bay. We find that the superior court used the correct standard of review, and we agree with its determination that the "zone of prohibition" was not a "water quality standard" requiring review under federal law. Accordingly we affirm.

*Background*:

The relevant facts are not in dispute.

Marina is a "county water district" established under Water Code section 30000 et seq. which provides water and sewer services for the City of Marina. The Regional Board is an administrative agency created by Water Code section 13200 and charged with various duties in connection with water quality control within its geographic region. The State Board has broad responsibility for developing and revising state policy for water quality control, including the formulation, adoption and revision of general procedures to be used by regional boards for the implementation of water quality control plans. (Wat. Code, §§ 13100, 13140, 13164.)

The dispute in the instant case involves the "zone of prohibition" which was established by the Regional Board as part of its water quality control plan, known as the "Basin Plan," on March 25, 1975, pursuant to section 13240 et seq. of the Water Code. The zone of prohibition is in an area of southern Monterey Bay, delineated by an imaginary line running from the mouth of the Salinas River to Point Pinos. The Basin Plan called for a prohibition on all waste water discharge into this zone by July 1, 1983. It also prohibited the discharge of Marina's secondary treated wastewater, effective 1981.

Because of the establishment of the zone of prohibition, the communities of Pacific Grove, Monterey, Salinas, Seaside, Del Rey Oaks and Fort Ord developed a regional wastewater treatment system as the most cost-effective means of dealing with wastewater problems in the affected area. This regional system is funded by state and federal grants. In November 1978, Marina chose not to join the system for economic reasons.

Subsequently Marina requested a hearing by the Regional Board to reconsider the validity of the existence of the zone of prohibition. On June 18, 1979, the Regional Board held a public hearing to consider whether there was "sufficient evidence to justify a reevaluation of the prohibition con-

tained in the Regional Board's Basin Plan[.]'' (Regional Board's minutes.) Testimony was presented by a variety of experts. In addition the Board considered various documents, letters, charts and studies discussed by the speakers and submitted by individuals not present at the hearing.

The Regional Board adopted a resolution finding that: (1) the establishment of the zone was appropriate at the time it was established; (2) more recent data still supported the prohibition; and (3) amendment to the Basin Plan with regard to the zone of prohibition was unwarranted.

Marina then requested that the State Board review the "Regional Board's determination not to review the prohibition zone provision of the Basin Plan." (State Board Order No. WQ/82-2.) A copy of this petition or request does not appear in the record. The State Board decided "on its own motion" to "review the propriety of the Regional Board's action." (*Ibid.*) It reviewed the technical data which were the primary basis for Marina's challenge and also considered social and economic factors. The State Board concluded that there was "sufficient evidence to sustain the zone of prohibition in southern Monterey Bay as it [was] . . . outlined in the [Basin Plan.]" (*Ibid.*) It therefore issued an order (WQ/80-13) declaring that the zone of prohibition was "appropriate and proper," and dismissing Marina's petition. This first order was declared void in a summary judgment by the superior court, because it was not approved by a majority, i.e., three members, of the Board as required by Water Code section 183. The State Board subsequently issued a second order (WQ/82-2) exactly the same as the first, but approved by the requisite majority. It is this second order which is the subject of the instant petition.

Marina petitioned the superior court for a writ of mandate under Water Code section 13330 and Code of Civil Procedure section 1094.5 to compel the State Board to reverse its decision or hold further hearings. The writ was denied and the instant appeal followed.[1]

*Discussion*:

1. *Whether the trial court was required by Water Code section 13330 to make an independent review of the administrative record.*

 Appellant is correct in asserting that under Water Code section 13330, subdivisions (a) and (b), the review of an action by the regional

---

[1]By stipulation of the parties, this matter has been consolidated in the trial court with the State Board's complaint for injunctive relief under Water Code section 13331 to enforce a "cease and desist" order requiring Marina to stop discharging wastewater into the prohibited zone. The trial court decided to hear the question of the validity of the State Board's order WQ/82-2 first.

board under section 13320 must be based on the court's independent judgment of the evidence in the record.

We agree with the trial court, however, that the State Board was not reviewing an action by the Regional Board under any of the statutory provisions enumerated in section 13320. It is clear that section 13320 governs review of a regional board's action or failure to act *only* under the enumerated provisions. (*Hampson* v. *Superior Court* (1977) 67 Cal.App.3d 472, 482-483 [136 Cal.Rptr. 722].)

█ The State Board's order, setting out Marina's contentions and the State Board's findings, correctly pointed out that "[f]ailure to act to revise a basin plan is not one of the Regional Board actions specifically reviewable by the State Board after a petition by an aggrieved person." That being the case, the State Board could have ended the whole matter at that point.

Instead, however, the State Board went on to assert its power to review *on its own motion* a regional board's "failure to act in revising a basin plan." The State Board reasoned that such a review was appropriate in light of the importance of Water Code section 13245 (which requires State Board approval of basin plans and their revisions), because a Regional Board's *failure* to review a plan could have a significant effect on an "aggrieved person." It therefore decided to go ahead and review the Regional Board's determination that there was insufficient evidence to justify modification of the zone of prohibition.

This action was proper, as a reasonable exercise of the State Board's general duties. █ It is clear that the State Board's action was not governed by section 13320, and was therefore not subject to the independent judgment standard of review under Water Code section 13330.

2. *Whether Code of Civil Procedure section 1094.5 required the trial court to exercise its independent judgment.*

Appellant argues that the Board's order finding the zone of prohibition "appropriate and proper" was an adjudicatory action, so that it must be reviewed under Code of Civil Procedure section 1094.5, which appellant asserts requires an independent review of the record to determine whether the agency's findings are supported by substantial evidence. This argument reflects some confusion about the operation of the statute governing administrative mandamus, and the principles governing judicial review of administrative actions generally.

Code of Civil Procedure section 1094.5 provides in pertinent part: "(b) The inquiry [into the validity of an administrative order] . . . shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence. [¶] (c) Where it is claimed that the findings are not supported by the evidence, *in cases in which the court is authorized by law to exercise its independent judgment* on the evidence, abuse of discretion is established if the court determines that the *findings are not supported by the weight* of the evidence; and *in all other cases,* abuse of discretion is established if the court determines that the findings are not supported by *substantial evidence* in the light of the whole record." (Italics added.)

Thus, if the instant case comes under this statute and *if* the superior court was obligated to exercise independent judgment in reviewing the administrative record, in order to uphold the Board, the court would have had to be convinced *by the weight* of the evidence that the Board's decision was correct. Simply put, the superior court would have had to agree with the Board, on the basis of the record. But if the court were not required to use its independent judgment, then its task would have been merely to determine whether there was substantial evidence in the record, taken as a whole, to support the Board's action, whether the court itself would have come to the same conclusion on that evidence or not. (See 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 217, pp. 3974-3975.)

■ In the instant case, however, we must address the threshold question of whether the superior court's review of the State Board's action was a matter of "administrative mandamus" governed by Code of Civil Procedure section 1094.5 at all, or whether instead it was governed by the principles of "ordinary mandamus." Like the trial court, we conclude that the instant case was a matter requiring review under the principles of ordinary mandamus.

This court made it clear in *Court House Plaza Co.* v. *City of Palo Alto* (1981) 117 Cal.App.3d 871 [173 Cal.Rptr. 161], that ". . . administrative mandamus review of actions by administrative agencies is limited to those instances in which a hearing is *required by law* before the administrative agency." (*Id.,* at pp. 879-880, original italics.) We explained that ■ "[i]t is the facts adduced at that hearing and the findings made thereon which are the subject of judicial review under administrative mandamus." (*Id.,* at p. 880.) ■ In *Court House,* although the administrative agency

had in fact held a hearing, it was not required by law to do so, and therefore we concluded that the agency's action was reviewable not under administrative mandamus but rather "under the rules applicable to traditional mandamus pursuant to Code of Civil Procedure section 1085." (*Ibid.*)

The same reasoning governs this case. The State Board decided on its own motion to review the decision by the Regional Board not to modify the zone of prohibition. While Water Code section 13245 does require a hearing before the State Board may revise a water quality control plan, the State Board's action in the instant case was not to revise a plan. Rather, it was a *review* of the *Regional Board's decision not to consider changing* its basin plan. Although the Board did hold a hearing in order to do this, it was not required by law to do so. Rather, it decided to do so "[b]ecause of the importance of this issue to the future of waste disposal in the area. . . ." (State Board order No. WQ/79-31.) Therefore, its action is not reviewable under Code of Civil Procedure section 1094.5.

Nor was Marina entitled to the superior court's independent judgment on the basis that the Board's action was "adjudicatory" rather than "quasi-legislative." The Board's action was not adjudicatory. It was not making a decision about an individual's rights, involving the application of a rule or law to an existing set of facts as, for example, would occur in the denial or granting of an application for a variance, or a use permit. (See *Davis* v. *California Coastal Zone Conservation Com.* (1976) 57 Cal.App.3d 700, 706 [129 Cal.Rptr. 417]; *Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 613 [156 Cal.Rptr. 718, 596 P.2d 1134]; *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34-35, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29].) Rather, to paraphrase the *Davis* court, it was acting in furtherance of its "planning function [entailing] the formulation of rules, by way of planning for future uses [of the state's water resources]." (*Davis, supra,* at p. 706; see also 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 215, pp. 3971-3972.) Therefore the Board's action was entitled to be upheld unless it was "arbitrary, capricious, or lacking in evidentiary support." (*California Hotel & Motel Assn.* v. *Industrial Welfare Com.* (1979) 25 Cal.3d 200, 212 [157 Cal.Rptr. 840, 599 P.2d 31].)

3. *Failure to allege prejudice.*

■ It is a basic general principle of California law that the court will not presume prejudice even if error is shown. (Code Civ. Proc., § 475.) "The *burden is on the appellant,* not alone to show error, but to show *injury* from the error." (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 290, p. 4277, original italics.)

Appellant has argued at some length that it was entitled to review by the superior court's independent judgment. But it has not alleged anywhere that had this standard of review been applied, there would have been a different result. Thus, even if appellant could establish that the wrong standard of review was used, it has not established a justification for reversal.

Most significantly we note that, although the trial court concluded that only an "arbitrary and capricious" test was necessary, it nevertheless found that the State Board's action was supported "by the weight of the evidence." Thus it appears that the trial court actually may well have applied the highest standard of review.

4. *Whether the zone of prohibition is a "water quality standard" requiring review every three years.*

■ Appellant contends that the zone of prohibition is a "water quality standard" which must be reviewed by the State every three years under the federal Clean Water Act (33 U.S.C. § 1251 et seq.), incorporated into the state law by Water Code section 13370 et seq.

Again, appellant has failed to establish that it has been prejudiced by the alleged error. It merely states in its opening brief that, ". . . if the State Board had conducted the required public hearings for the purpose of said review [of water quality standards], as mandated by Congress, it is not unreasonable to conclude that such appeal as that of Marina here would be unnecessary." And in its reply brief, it states that "this case and the ensuing appeal would probably not have been necessary. . . ." Neither of these statements is supported by any discussion of the record. Moreover, they fall far short of an affirmative argument that the result in the trial court would have been different even if the zone had been found to be a "water quality standard." Respondent, on the other hand, insists that it would not have made a difference because the review requirements were met anyway.

In any case, we find that the trial court's conclusion that the zone is not a "water quality standard" is correct.

The federal law governing the adoption, review and modification of water quality standards contains the following definition: "[s]uch revised or new water quality standard shall consist of the *designated uses* of the navigable waters involved and the *water quality criteria* for such waters based upon such uses." (33 U.S.C.A. § 1313 (c)(2), italics added.)

The "designated uses" of navigable waters in California submitted by the state for review of the federal Environmental Protection Agency under this

statute are found in chapter 2 of the Water Quality Control Plan for the Central Coastal Basin. The chapter describes then-current uses as "water supply, recreation, fish and wildlife habitat, navigation, commercial fishing and scientific study." It discusses further refinements of categorizations, however, so that the beneficial uses of the waterways include such categories as: municipal and domestic supply, industrial service supply, navigation, water contact recreation, ocean commercial and sport fishing, preservation of areas of special biological significance, etc. Clearly the zone of prohibition is not a "use" of the waterways.

The "water quality criteria . . . based upon such uses" are set out in chapter 4 of the Basin Plan. They include sets of guidelines for evaluating and controlling the quality of water with regard to the concentration of pollutants; pH levels; temperatures; and so on.

The zone of prohibition, by contrast, is part of the implementation plan section of the Basin Plan. It is one of many "discharge prohibitions" established to "achieve water quality objectives."

The prohibition against discharging waste into the southern Monterey Bay is therefore not itself a "standard"; it is rather one of many steps the Regional Board has taken to *promote* the standards that have been set, and which are subject to review.

The judgment of the trial court is affirmed.

Scott, J., and Barry-Deal, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 20, 1985.