[No. B089564. Second Dist., Div. One. June 17, 1996.]

BARBARA BLACK et al., Plaintiffs and Appellants, v.
BOARD OF TRUSTEES OF THE COMPTON UNIFIED SCHOOL
DISTRICT et al., Defendants and Respondents.

**COUNSEL**

Schwartz, Steinsapir, Dohrmann & Sommers and Michael R. Feinberg for Plaintiffs and Appellants.

Melanie E. Lomax and Carolyn Dye for Defendants and Respondents.

OPINION

MASTERSON, J.—During the 1992-1993 school year, nine teachers of adult education in the Compton Unified School District (the District) had their hours reduced by approximately 6 to 18 percent as a result of a budget crisis. They filed this action, seeking a writ of mandate to restore the lost hours and to recover back wages. The trial court denied the petition. We affirm.

## BACKGROUND

In 1993, the District was experiencing severe fiscal problems and became insolvent. In response, the Legislature enacted urgency legislation, making an appropriation to the District of $10.5 million and transferring operational control of the District from its governing board to a state-appointed administrator. (Stats. 1993, ch. 78, §§ 1, 5.)

Under the supervision of the state administrator, the District implemented several cost-cutting measures, including layoffs of teachers, the consolidation and elimination of administrative positions, and salary reductions for administrative employees and teachers.

The District's adult school program was also affected by the budgetary crisis. The adult school is financed through student enrollment, and expenses must be consistent with average daily attendance. For the 1991-1992 school year, the average daily attendance was 1,712; for 1992-1993, it was 1,710; and for 1993-1994, it was 1,601. For several years, the school's operating expenses had exceeded its income.

In light of fiscal concerns, the administration of the adult school decided in early 1993 to reduce the work hours of nine teachers, all of whom enjoyed permanent status. By memorandum dated January 19, 1993, the school principal, Saundra Bishop, notified the affected teachers of the change in hours. That memo stated in part: "As you know, educational finances throughout the state of California have been reduced significantly, as costs continue to rise. Compton Adult School is no exception to this serious financial crisis. [¶] The Compton Adult School budget is significantly higher than the projected incomes. We have, therefore, [had] to adjust, combine, reduce or eliminate several assignments of our staff . . . ." The memo indicated that effective February 1, 1993 (and for the remainder of the school year), each teacher's workweek would be reduced as follows:

Barbara Black: 30 hours to 28 hours (reduction of 6.6 percent)

Sandra Hawkins: 30 hours to 28 hours (reduction of 6.6 percent)

Bessie Jones: 30 hours to 28 hours (reduction of 6.6 percent)

Daniel Jones: 40 hours to 35 hours (reduction of 12.5 percent)

Renée Pittman: 40 hours to 35 hours (reduction of 12.5 percent)

Susan Ramirez: 30 hours to 28 hours (reduction of 6.6 percent)

Lionel Spears: 35 hours to 33 hours (reduction of 5.7 percent)

Mary Washington: 30 hours to 28 hours (reduction of 6.6 percent)

Gregory Watson: 34 hours to 28 hours (reduction of 17.6 percent)

These reductions were made by eliminating the teachers' half-hour preparation periods or by reducing their extra duty assignments. Because teachers in the adult school are classified as full-time employees if they work more than 20 hours a week, the affected teachers remained employed on a full-time basis, with no change in employee benefits. However, each teacher did incur a loss in pay.

In March 1993, the nine affected teachers (hereafter plaintiffs) filed this action against the District's board of trustees and others,[1] seeking a writ of mandate to compel the District to restore plaintiffs to their previous number of hours and to compensate them for lost wages. At a hearing held on April 6, 1993, the trial court denied the petition on the ground that plaintiffs had not exhausted their administrative remedies under the collective bargaining agreement between the District and the Compton Education Association, of which plaintiffs were members. Plaintiffs appealed that decision. In an unpublished opinion filed on April 7, 1994 (*Black* v. *Board of Trustees* (B075819)), we reversed, holding that the parties' dispute was not subject to the bargaining agreement's grievance procedure. We remanded the case to the trial court for a determination on the merits.

On September 7, 1994, the trial court held a second hearing on the petition and denied it on the merits. In its statement of decision, the court found that the District "had the legal authority to reduce the teaching hours of the [plaintiffs] without providing a hearing and complying with the procedures

---

[1]Named as defendants in the petition were the board of trustees, the individual members of the board, and the superintendent of schools for the District. For convenience, we will use the term "District" to refer to all of the defendants.

of [the] Education Code . . . . These Education Code sections apply to dismissals and the [plaintiffs] were not terminated from their employment positions . . . ." On November 16, 1994, the trial court entered judgment denying the petition. Plaintiffs filed a timely appeal.

## DISCUSSION

Plaintiffs contend that the District could not reduce their hours without providing the notice and hearing mandated by the Education Code and the due process clause. The District argues that it had no such obligations. We agree with the District and affirm.

### A. *Standard of Review*

■ Whether we treat the petition below as one for traditional mandamus (Code Civ. Proc., §§ 1084-1094) or administrative mandamus (*id.* § 1094.5), the standard of review is the same. Because this case presents a question involving the interpretation and application of the Education Code, we review the trial court's decision de novo. (See *Jefferson* v. *Compton Unified School Dist.* (1993) 14 Cal.App.4th ·32, 37-38 [17 Cal.Rptr.2d 474]; *Riveros* v. *City of Los Angeles* (1996) 41 Cal.App.4th 1342, 1348-1350 [49 Cal.Rptr.2d 238].)

### B. *Rights Under the Education Code*

■ Plaintiffs contend that their reduction in hours constituted a "partial termination" of employment and that they were therefore entitled to notice and a hearing under sections 44949 and 44955 of the Education Code.[2] Together, these statutes contemplate that a permanent teacher will receive two notices and a hearing before being terminated effective *the following school year*. Section 44949 states that notice of *possible* termination must be given by March 15 and entitles the teacher to a hearing "to determine if there is cause for not reemploying him or her for the ensuing year." (§ 44949, subd. (b).) Under section 44955, the teacher must receive notice of *actual* termination by May 15, and "[n]o permanent employee shall be *deprived of his or her position* for causes other than those specified in [certain other sections of the Education Code]." (§ 44955, subds. (a), (c), italics added.)[3]

According to plaintiffs, the reductions in their hours during the 1992-1993 school year effected a partial termination of their employment within the

---

[2]Unless otherwise indicated, all further statutory references are to the Education Code.

[3]Section 44955 states in part: "(a) No permanent employee *shall be deprived of his or her position* for causes other than those specified in Sections 44907 and 44923, and Sections 44932 to 44947, inclusive . . . . [¶] (b) Whenever in any school year the average daily attendance in all of the schools of a district for the first six months in which school is in session shall have declined below the corresponding period of either of the previous two

meaning of sections 44949 and 44955. If this is true, plaintiffs had to receive the requisite statutory notices and an opportunity for a hearing during the *prior* school year. That was not done. Plaintiffs therefore conclude that the reduction in hours was unlawful.

We reject plaintiffs' argument because we do not find that the reduction in their hours constituted a termination of employment. "It is well established that school districts in the normal course of administration have broad powers to reassign their permanent employees to different positions, *including positions involving a reduction in pay* and prestige, subject only to two requirements: (1) reasonableness . . . and (2) that the reassigned position be 'within the scope of the certificate under which tenure was acquired' . . . or 'the work assigned is of a rank and grade equivalent to that by which the permanent status was acquired.' . . ." (*Thompson* v. *Modesto City High School Dist.* (1977) 19 Cal.3d 620, 623 [139 Cal.Rptr. 603, 566 P.2d 237], citations omitted, italics added (hereafter *Thompson*).)

In this case, both of the *Thompson* requirements were satisfied. First, the reduction in hours was reasonable, given the financial crisis facing the District. Second, in the words of the trial court, "there has been no showing by [plaintiffs] that their change in assignments was outside the scope of their certificates." Accordingly, the District's action was entirely proper under the rule announced in *Thompson, supra,* 19 Cal.3d at page 623.

Nevertheless, plaintiffs argue that section 44955 entitled them to procedural safeguards which the District failed to provide, thus rendering the reduction in hours unlawful. However, as the statutory language makes clear, section 44955 applies only to terminations of employment—where it becomes necessary "to decrease the number of permanent employees in the district." (§ 44955, subd. (b); see fn. 3, *ante* [quoting statute].) In this case,

---

school years, whenever the governing board determines that attendance in a district will decline in the following year as a result of the termination of an interdistrict tuition agreement as defined in Section 46304, whenever a particular kind of service is to be reduced or discontinued not later than the beginning of the following school year, or whenever the amendment of state law requires the modification of curriculum, and when in the opinion of the governing board of the district it shall have become necessary by reason of any of these conditions to *decrease the number of permanent employees* in the district, the governing board may *terminate the services* of not more than a corresponding percentage of the certificated employees of the district, permanent as well as probationary, at the close of the school year. . . . [¶] . . . (c) Notice of such *termination of services* shall be given before the 15th of May in the manner prescribed in Section 44949, and *services of such employees shall be terminated* in the inverse of the order in which they were employed . . . . In the event that a permanent or probationary employee is not given the notices and a right to a hearing as provided for in Section 44949, *he or she shall be deemed reemployed* for the ensuing school year." (Italics added.)

the District did not reduce the number of teachers; it reduced the number of work hours. A reduction in work hours by 5.7 to 17.6 percent does not fall within the statute's reach. Moreover, section 44955 expressly provides that the remedy for its violation is to deem the aggrieved employee "reemployed for the ensuing school year." (§ 44955, subd. (c); see fn. 3, *ante* [quoting statute].) Here, plaintiffs were clearly "reemployed" for the pertinent school year; the reduction in their hours did not render them "unemployed." Given that the remedy established by section 44955 cannot cure the District's alleged wrongful conduct, it follows that the reduction in hours did not violate the statute in the first place.

This conclusion is supported by the Supreme Court's discussion of section 44955 in *Thompson, supra*, 19 Cal.3d 620. As the high court explained:

"First, all the code sections referred to in the first paragraph of section 44955 refer to dismissal of permanent or probationary employees or to termination of their services pursuant to section 44955 itself. Therefore it is clear that 'deprived of his position' refers to dismissal or termination of services. Accordingly, it has been held that section 44955 has no application to the reassignment or demotion of administrators to the position of class-room teacher. . . . Moreover, section 44955 was in effect and contained the relevant language concerning 'deprivation of position' at the time the general rule was established that school districts may reassign permanent employees to any position within the scope of the certificate under which they acquired permanent status subject only to the requirement of reasonableness. . . .

"Second, section 44955 was enacted to authorize school districts to terminate employment of permanent employees in order to reduce their number when there has been a reduction in the number of students or when it is necessary to reduce or discontinue a particular kind of service and to provide the procedures by which this reduction may be effected. . . . Section 44955 only comes into play once the school district has decided to terminate the services of certain permanent employees in order to reduce the number of employees because of a reduction in the number of students or in order to reduce or discontinue a type of service. . . . Once the school district has determined a need to effect a reduction in the number of permanent employees, it must then comply with the procedures set forth in section 44955, which requires among other things that the school district must effect such termination in order of seniority. . . . Section 44955 applies to reassignments only after the school board has determined to terminate the services of a permanent employee pursuant to section 44955 and then only to assure that that employee, if entitled so by seniority and qualifications, be reassigned

rather than terminated." (*Thompson, supra,* 19 Cal.3d at pp. 627-628, citations omitted.)

We conclude that, consistent with its language and *Thompson,* section 44955 does not apply where (1) a teacher's hours are merely reduced in the range of 5.7 to 17.6 percent and (2) the teacher remains employed full time, with no loss in benefits.[4] A partial, minor reduction in hours is not a termination of employment. (See Black's Law Dict. (6th ed. 1990) p. 1471, col. 2 [defining "termination of employment" as "a complete severance of [the] relationship of employer and employee"].) Indeed, even in the constructive discharge context, such a change in work conditions would not be actionable. (Cf. *Turner* v. *Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1247 [32 Cal.Rptr.2d 223, 876 P.2d 1022] ["a demotion, even when accompanied by reduction in pay, does not by itself trigger a constructive discharge"]; *Gray* v. *York Newspapers, Inc.* (3d Cir. 1992) 957 F.2d 1070, 1086 [no constructive termination where employee's work hours were reduced from 37 to 25 a week].)[5]

Finally, plaintiffs' reliance on section 44929.25 is of no avail. That statute provides in part that a teacher of adult education shall receive tenure "for the service equivalent to the average number of hours per week that he or she has served during his or her probationary years" and that "[t]he service for which the person has acquired tenure may be reduced in conformity with Section[] 44955 . . . ." As we read it, section 44929.25 simply guarantees that teachers of adult education receive the same protections as other teachers under section 44955. Those protections, as stated, apply only to a termination of employment, not to a partial, insignificant reduction in work hours.

In sum, the trial court properly found that plaintiffs' rights under the Education Code were not violated.

## C. *Due Process Rights*

In their opening brief, plaintiffs assert that the District's "failure to comply with Education Code §§ 44949 and 44955 . . . is a denial of

---

[4]There was conflicting evidence as to what constituted full-time employment. The school principal drew the line at 20 hours per week, while plaintiffs claimed that at least 30 hours were necessary. However, it is not our task to resolve conflicts in the evidence, and we must assume that the trial court resolved this disputed issue in favor of the District. (See *Lam* v. *Bureau of Security & Investigative Services* (1995) 34 Cal.App.4th 29, 35-36 [40 Cal.Rptr.2d 137]; *Court House Plaza Co.* v. *City of Palo Alto* (1981) 117 Cal.App.3d 871, 887 [173 Cal.Rptr. 161], cert. den. 454 U.S. 1074 [70 L.Ed.2d 607, 102 S.Ct. 623].)

[5]We are not faced here with the hypothetical posed by plaintiffs—where a school district reduces a teacher's hours by 95 percent. Accordingly, we do not address that situation.

[plaintiffs'] constitutional due process rights." (Citing *Perry* v. *Sindermann* (1972) 408 U.S. 593 [33 L.Ed.2d 570, 92 S.Ct. 2694] and *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774].)

To the extent this contention is based on a violation of the Education Code, it is without merit for the reason that no such violation occurred. (See pt. B., *ante.*) Moreover, to the extent plaintiffs are claiming that the District violated the due process clause independently of the Education Code, this contention, too, lacks merit. Before the due process clause mandates procedural safeguards in the employment context, the employee must establish that the employer's conduct adversely affects a constitutionally recognized property right. (*Shoemaker* v. *County of Los Angeles* (1995) 37 Cal.App.4th 618, 630-631 [43 Cal.Rptr.2d 774].) In this case, plaintiffs have not identified a protectible property interest, i.e., a legitimate entitlement to the hours they previously worked. (See *ibid.*) Accordingly, the District did not violate the due process clause in reducing plaintiffs' work hours.

### DISPOSITION

The judgment is affirmed.

Ortega, Acting P. J., and Vogel (Miriam A.), J., concurred.